412 P.2d 864

**STATE of Arizona, Appellee,**

v.

**Charles Willard COFHLIN, Appellant.**

**No. 2 CA–CR 34.**

Court of Appeals of Arizona.

April 12, 1966.

Rehearing Denied May 12, 1966.

Review Denied June 7, 1966.

Darrell F. Smith, Atty. Gen., Richard J. Riley, Cochise County Atty., Bisbee, for appellee.

Russell Russo, by J. M. Murphy, Tucson, for appellant.

KRUCKER, Chief Judge.

Appellant, Charles Willard Cofhlin, was charged with six counts of burglary, first degree, and convicted by a jury on two counts. From denial of a motion to suppress evidence, from the verdict and judgment thereon, and from denial of a motion for a new trial, the appellant has appealed.

On March 31, 1965, Cofhlin was hitch-hiking from Phoenix to Sierra Vista and was picked up in the vicinity of Tucson by several soldiers stationed at Fort Huachuca. Cofhlin told the soldiers he was a carnival worker and was going to Sierra Vista to join a carnival located there. During the journey to Bisbee, several stops were made for beer and sandwiches. The soldiers paid for these purchases since Cofhlin told them he had no money. Upon reaching Bisbee, Cofhlin in the company of one of the soldiers named Jorgenson, and the soldier's wife, went to Naco, Sonora, had more beer and returned to Bisbee about 1:05 a. m. Cofhlin assisted Jorgenson's

wife get her husband to bed and was asked to leave. He went outside the apartment building and claimed that he slept in Jorgenson's car until, because of the cold, he went back into the apartment building and fell asleep in the hallway.

About 5:00 a. m., April 1, 1965, another soldier living across the hall from Jorgenson saw Cofhlin sleeping in the hall. He noticed that Cofhlin was wearing a new khaki shirt and trousers and suspected that Cofhlin had stolen the khakis from Jorgenson's foot locker in the hall. Hearing a commotion in the hall, Jorgenson and his wife appeared and all three checked the label in Cofhlin's shirt. The shirt had a Penney's Department Store label and was not Jorgenson's. Cofhlin was ordered to leave the premises and did so.

During the early morning hours of April 1, 1965, six business establishments in Bisbee were forcibly entered. One of the six establishments was the Penney's Department Store from which a special order khaki shirt, khaki trousers and a cowboy belt were stolen. Another establishment burglarized was the Sugar Bowl, from which approximately $78.00 in change was stolen. Local newspapers carried the story of the burglaries and Jorgenson, seeing the story, went to the police and reported the foregoing facts.

Chief Malley, of the Bisbee Police Department, drove to Sierra Vista with Jorgenson and two other soldiers and talked with a Mr. Capell of the Capell Brothers Circus. Capell told Chief Malley that Cofhlin had sought employment with him, that he obtained a room in Sierra Vista, that he "had eating money on him" and that he was wearing a clean new khaki shirt and trousers with a cowboy belt. Chief Malley and a Sierra Vista police officer went to the apartment, the landlady pointed out Cofhlin's apartment, Chief Malley went to the rear of the apartment, the officer went to the front and knocked on the door. Cofhlin opened the door, both officers entered, searched Cofhlin finding approximately $48.00 in change, and took

him to the Sierra Vista police station where he was identified by the soldiers. Cofhlin was taken to Bisbee where he was charged with commission of the six burglaries.

■ Appellant assigns three errors allegedly committed by the lower court. The first assignment of error concerns an instruction regarding the definition of reasonable doubt. The court gave a standard stock instruction on reasonable doubt. We see no fundamental error in the instruction and need not review the merit of appellant's contention, since the record discloses that the instruction is appellant's requested instruction number 11. Having requested the instruction, he cannot now be heard to object to such instruction on appeal. State v. Bird, 99 Ariz. 195, 407 P.2d 770 (1965); State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960); State v. Serna, 69 Ariz. 181, 211 P.2d 455 (1949), cert. denied Serna v. Walters, 339 U.S. 973, 70 S.Ct. 1031, 94 L.Ed. 1380 (1950).

■ The next two issues raised challenge the constitutionality of the search and seizure, largely based on the contention that it preceded the appellant's arrest. We cannot agree that such an unequivocal distinction should be made; i. e., that a search and seizure subsequent to a lawful arrest may be constitutional whereas a search and seizure made prior to a lawful arrest cannot. The distinction appears academic and hypertechnical when confronted with the established test of reasonableness.

In a long line of cases the United States Supreme Court has held that only unreasonable searches and seizures are proscribed by the Fourth Amendment to the United States Constitution. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The Mapp decision noted that the prohibitions of the Fourth Amendment are enforceable against the states through the Fourteenth Amendment due process clause. Arizona has acknowledged the applicability

of the Mapp rule in State v. Quintana, 92 Ariz. 267, 376 P.2d 130 (1962), and recognized in accordance with Mapp that the test for lawful searches and seizures was the reasonableness of the search under the circumstances. In Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 1232, 92 L.Ed. 1663, 1669 (1948), the United States Supreme Court established that "[i]t is a cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants wherever reasonably practicable." (Citing cases.) However, in United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653, 660 (1950), the same court stated:

> "To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case."

In the subsequent case of Rios v. United States, 364 U.S. 253, 261, 80 S.Ct. 1431, 1436, 4 L.Ed.2d 1688, 1693 (1960), the United States Supreme Court stated that "[t]he seizure can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant." (Citing cases.) The exception urged in that case was that the seizure was incident to a lawful arrest but the court found that no probable cause existed on which to base the arrest and the conviction was reversed. However, implicit in the language of the opinion is the fact that a search and seizure incident to a lawful arrest, based upon probable cause, is at least "one of the exceptions to the rule that a search must rest upon a search warrant."

The exception as to searches and seizures incident to a lawful arrest is firmly established and beyond dispute. However, in cases of searches and seizures incident to a lawful arrest, probable cause to justify the arrest and search and seizure without a warrant is requisite, and such is based on reasonable grounds in the belief of guilt. In Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890 (1949), which case involved an automobile and the issue of probable cause to support the arrest of Brinegar, the United States Supreme Court defined probable cause as follows:

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
>
> " 'The substance of all definitions' of probable cause 'is a reasonable ground for belief of guilt.' (Citing cases.) And this 'means less than evidence which would justify condemnation' or conviction, * * *. Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (Citing case.)

In cases subsequent to the Brinegar decision, the U. S. Supreme Court has effectively avoided any precise definition of probable cause. In Ker v. State of California, supra, the Court, in reviewing what the Mapp decision failed to decide, acknowledged that Mapp did not attempt the impossible task of laying down a fixed formula for the application of constitutional prohibitions against unreasonable searches and seizures. The Court further stated that there is no formula for the determination

of reasonableness and that each case must be decided on its own facts and circumstances. In addition, the court noted that "standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application * * * when that Amendment's proscriptions are enforced against the States through the Fourteenth Amendment." 374 U.S. 33, 83 S.Ct. 1630.

We conclude that the basis for review requires an examination of each case to determine whether the search and seizure was reasonable in the light of the facts and surrounding circumstances. The U. S. Supreme Court further stated in Ker v. State of California, supra, at 374 U.S. 33, 83 S.Ct. 1630, 10 L.Ed.2d 738:

"We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees."

This conclusion is further buttressed by the recognition of the Arizona Supreme Court that the test of the legality of a search and seizure is whether it was reasonable under the circumstances. State v. Bradley, Jr., 99 Ariz. 328, 409 P.2d 35 (1965); State v. Quintana, supra; State v. Baca, 1 Ariz.App. 16, 398 P.2d 924 (1965). We are, therefore, compelled to examine the facts and surrounding circumstances of this case in the light of these pronouncements to determine whether the search and seizure was reasonable.

The record discloses that on the evening of April 1, 1965, Chief Malley knew that six burglaries had been committed and was informed of the events of the prior day by the soldiers who had given appellant the ride from Tucson to Bisbee. He knew that Cofhlin had no luggage when picked up, that he was wearing levis and a tee shirt, that he had obtained a shirt from Jorgenson

in order to be admitted to one of the bars visited, that he had no money to purchase beer and sandwiches during the trip to Bisbee, and that he had new khaki clothing on when found outside Jorgenson's apartment early in the morning of April 1, 1965. Chief Malley was told by the owner of the Capell Brothers Circus in Sierra Vista that Cofhlin sought employment there, that he was dressed in new khakis, that Cofhlin then had eating money, which apparently is unusual for "carnie" workers, and that he had paid for four nights' rent at a local apartment. Chief Malley was also aware of the fact that a special order khaki shirt and khaki trousers were stolen from Penney's Department Store, that the shirt Cofhlin had on when examined by Jorgenson at the apartment had a Penney's label, and that another establishment had lost $78.00 in change.

Chief Malley obtained an "identokit" facsimile of Cofhlin's face and went to the apartment where Cofhlin was staying in Sierra Vista, in the company of a local police officer. Both officers entered the apartment, identified themselves, asked Cofhlin his name and what he had in his pockets. Cofhlin pulled out some change and when asked whether he had anything else, he raised his hands and permitted a complete search of his person which revealed $48.00 in change. Cofhlin was taken to the Sierra Vista police station, identified by the soldiers, and then taken to Bisbee where he was charged with commission of the burglaries.

From our review of the foregoing facts, we hold that sufficient probable cause existed on which to base an actual arrest of Cofhlin under the circumstances. Chief Malley recognized Cofhlin and further noted the clothing in question, i. e., the Penney's khaki shirt and trousers, in Cofhlin's possession. Thus, sufficient probable cause on which to base an arrest existed and the search was, therefore, reasonable under these circumstances.

We find no merit in the contention that a reasonable search and seizure should

be rendered unconstitutional merely because there exists some question as to the point in time at which an actual arrest occurred. Numerous pronouncements of the U. S. Supreme Court and the Arizona Supreme Court have established that only unreasonable searches and seizures are proscribed by the Fourth Amendment, that the test of the constitutionality of a search and seizure is whether it was reasonable under the facts and circumstances of the case, and that one test of reasonableness is whether the search and seizure was incident to a lawful arrest. Implicit in these pronouncements is the conclusion that other forms of reasonable searches and seizures are permissible under the Fourth Amendment as exceptions to the general requirement that a search warrant must be obtained wherever reasonably practicable. Thus to conclude that a reasonable search and seizure, the reasonableness thereof being based on sufficient probable cause on which to base an arrest, is to be rendered unconstitutional merely because it preceded an actual arrest appears hypertechnical and irreconcilable in logic and reason.

■ It is our considered judgment that in examining the reasonableness of a search and seizure in cases such as this, assistance may be gained by determining whether probable cause existed on which to base an arrest. Thus, whether the search and seizure occurred prior to or subsequent to the actual arrest is not of paramount significance. What appears significant is the fact that probable cause existed to support an arrest, thereby rendering the search reasonable. This will provide some leeway in the exercise of reasonable, prudent and cautious police investigative techniques in the interrogation and apprehension of criminals.

■ However, in the case before us we believe that an actual arrest occurred at Cofhlin's apartment. Chief Malley testified that if the appellant had attempted to escape he would have stopped him. His conduct in going to the rear of the apartment, while the other officer went to Cofhlin's door, is not consistent with a finding that the officers did not intend to restrain Cofhlin and prevent his escape. In Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 139 (1959), the United States Supreme Court stated:

> "The prosecution conceded below, and adheres to the concession here, that the arrest took place when the federal agents stopped the car. That is our view on the facts of this particular case. When the officers *interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete.*" (Emphasis supplied.)

In State v. Lopez, 96 Ariz. 169, 171, 393 P.2d 263, 265 (1964), our Supreme Court was confronted with the question of whether or not an arrest was made and stated that "[t]he facts indicate that there was an actual restraint and a submission to the custody of the officers by the defendant." In the earlier case of Swetnam v. F. W. Woolworth Co., 83 Ariz. 189, 192, 318 P.2d 364, 366 (1957), the Arizona Supreme Court, in reviewing the issue of false arrest and imprisonment, stated that "[a]ny restraint, however slight, upon another's liberty to come and go as one pleases, constitutes an arrest." In accordance with these pronouncements, and the facts as disclosed by the record, we conclude that there was an actual restraint on Cofhlin's liberty, that he submitted to the custody of the officers, and was actually arrested at his apartment. Under this conclusion, the search was incident to a lawful arrest and not in violation of constitutional prohibitions contained in the Fourth Amendment to the United States Constitution and pronouncements of the U. S. Supreme Court.

In accordance with the foregoing conclusions, the judgment of conviction is affirmed.

HATHAWAY and MOLLOY, JJ., concur.