422 P.2d 719

**STATE of Arizona, Appellant,**

v.

**Janell OVENS, Claire Ovens, and Chyrl Merth Allison, Appellees.**

**No. 1 CA–CR 88.**

Court of Appeals of Arizona.

Jan. 27, 1967.

Rehearing Denied Feb. 20, 1967.

Review Denied March 14, 1967.

Robert K. Corbin, Maricopa County Atty., by Albert Firestein, Deputy County Atty., for appellant.

Lewis, Roca, Scoville, Beauchamp & Linton, by John J. Flynn, David C. Schutter, Phoenix, for appellees.

STEVENS, Judge.

This Court is concerned with the question: What constitutes a de facto deputy sheriff?

A complaint was filed before a Justice of the Peace charging the three appellees with the offense of obstructing justice, a felony in violation of A.R.S. Section 13–541. A preliminary hearing was duly conducted, the defendants were bound over and an information charging the offense was filed in the Superior Court. The reporter's transcript of the preliminary hearing was filed in the Superior Court and treated as a bill of particulars pursuant to Rule 169, subsec. A, par. (e) of the Rules of Criminal Proce-

dure, 17 A.R.S. The defendants filed their motion to quash the information, the motion was granted and the State has appealed pursuant to A.R.S. Section 13–1712.

This case turns upon the question of whether Glenn W. Martin and Allen G. Roth were de facto deputy sheriffs on 20 September 1965, the date of the alleged offense. The State does not urge that these men were de jure deputy sheriffs. The County Attorney appointed Martin as an "Accountant Investigator" and Roth as a "Criminal Investigator". The official minutes of the Board of Supervisors of Maricopa County reflect the Board's approval of Martin's appointment on 16 February 1965 and of Roth's appointment on 8 March 1965. These positions are not statutory. The Vice-Chairman of the Board understood that these men would have issued to them deputy sheriff cards by the Sheriff of Maricopa County and that they would also serve warrants. The Vice-Chairman and the County Attorney theretofore had informally discussed the County Attorney's need for investigators who could serve warrants of arrest. The evidence does not disclose that the other members of the Board participated in any such discussion or that they were cognizant of the fact that Martin and Roth would be issued deputy sheriff cards and would serve warrants.

Following their appointments, both men were carried on the payroll of the County Attorney. Neither man received any compensation from the funds budgeted for the use of the Sheriff of Maricopa County. On 3 March 1965, the Chief Deputy Sheriff administered a verbal oath to Martin and Roth who were then issued deputy sheriff cards signed by the Sheriff. The cards were the standard form of card issued to regular deputy sheriffs except that they carried the words "County Attorney Investigator". Both cards were identical except as to the name, signature and picture of the person to whom the card was issued. Martin's deputy sheriff card and "professional card" are reproduced in this opinion. Roth's cards were similar. Both

deputy sheriff cards were outstanding and were neither revoked nor recalled on 20 September 1965.

On 20 September 1965, a warrant for the arrest of R. J. Allison, which warrant related to a complaint charging two

counts of perjury, was issued by a Justice of the Peace of Maricopa County. The warrant was not presented to the Office of the Sheriff, but was given to Roth by the Justice of the Peace. Roth, accompanied by Martin, both dressed in civilian clothes, took the warrant to the Allison home for the purpose of serving the same and for the purpose of placing Allison under arrest. Mrs. Allison and her daughters, the defendant-appellees herein, interfered with the service of the warrant. The criminal charge in question followed:

A.R.S. Section 13–541 provides in part:

"Resisting, delaying, coercing or obstructing public officer; punishment

"A person who attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law, or who wilfully resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office, or who knowingly resists by the use of force or violence the officer in the performance of his duty, * * *" is guilty of an offense.

The statute specifies that the offense may be either a felony or a misdemeanor. It can be seen that the essential elements of the crime are the "obstructing" of a "public officer" in the performance of a "duty" imposed by law or arising out of his official position.

A.R.S. Section 11–401 provides that the Sheriff and County Attorney are officers of the county. A.R.S. Section 11–441 enumerates the powers and duties of the Sheriff, including the power of arrest. A.R.S. Section 11–409, subsec. A authorizes the Sheriff and the County Attorney to appoint deputies " * * * by and with the consent of, and at salaries fixed by the board * * *." The same section also provides that "(t)he appointments shall be in writing, and filed in the office of the county recorder". A.R.S. Section 38–463, subsec. A states that public officers " * * * may require an official bond from a deputy appointed by him * * *".

In relation to warrants for the arrest of persons, Rule 4 of the Rules of Criminal Procedure, specifies:

"The warrant shall be directed to all peace officers in the state. It shall be executed only by a peace officer, and may be executed in any county by any peace officer in the state."

A.R.S. Section 1–215 is a definitions section of the Code and provides in part:

"In the statutes and laws of the state, unless the context otherwise requires:
* * *

"20. 'Peace officers' means sheriffs of counties, constables, marshals and policemen of cities and towns."

A.R.S. Section 13–1407 is entitled: "Method of arrest by officer by virtue of warrant" and directs the manner of service by "the officer".

The Sheriff's Office in Maricopa County has a warrant section under the supervision of a lieutenant and a sergeant. All warrants received by the Office of the Sheriff are registered in this section before they are served. Although we have not been cited to a statute so requiring, this is an excellent practice. This practice is of interest in relation to the de facto status of Martin and Roth. After the warrants are registered, they are assigned to deputies for service.

Differing from the procedure followed in relation to the issuance of the deputy sheriff cards to Martin and Roth, regular deputies sheriff subscribe to a written oath before a notary public. The oath is then forwarded to the Board of Supervisors for its action pursuant to A.R.S. Section 11–409 and then to the Office of the County Recorder. These statutory provisions were not observed in relation to Martin and Roth. The Chief Deputy Sheriff testified that he was informed by an attorney on the staff of the Board of Supervisors that Martin and Roth were insured by the county's public liability insurance policy which carried a false arrest rider applicable to Mar-

tin and Roth. This information was verified by an agent of the insurance company.

Before a person is authorized to serve a warrant, that person must occupy the position of a peace officer, the statutory duties of whom authorize the service of warrant.

The case of State v. Kurtz, 78 Ariz. 215, 278 P.2d 406 (1954), involved the charge of obstructing justice in reference to activities of de jure officers. The officers alleged to have been obstructed were regularly appointed uniformed police officers of the City of Phoenix who were performing security responsibilities on their off-duty time. They were paid for this service by the owner of a private establishment. They were not controlled or supervised in connection with the performance of their responsibilities by the owner of the establishment, but were acting pursuant to duly adopted police regulations and with the consent and approval of the Chief of Police. Also it was understood by both the owner and the officers that they were to respond immediately to any emergency call made upon the officers by the police department. By contrast, Martin and Roth were full-time employees of the Office of the County Attorney, an office not charged with peace officer responsibilities; they were not under the direction or the control of the Sheriff of Maricopa County; and neither wore a uniform.

The case of State v. Stago, 82 Ariz. 285, 312 P.2d 160 (1957), also involves the charge of obstructing justice. The charge asserted that Ernest Dillon was a Deputy Sheriff of Navajo County. He held a Deputy Sheriff's card and wore a police officer's uniform in connection with his employment by the Pinetop Merchant Patrol. He was neither paid a salary from the county as a deputy sheriff nor was his appointment recorded in the Office of the County Recorder. While this appointment was not directly approved by the Board of Supervisors of Navajo County, the Supreme Court did find consent by the Board of Supervisors of Navajo County. In holding that Dillon was a de facto Deputy Sheriff, the court stated:

"In the instant case, the Sheriff of Navajo County testified that he had appointed Dillon as a deputy sheriff and issued to him a card confirming the appointment. This is sufficient compliance with the statute that 'appointments shall be in writing'. There is no evidence that the appointment was ever formally approved by the Navajo County Board of Supervisors, but since the statute does not require any particular method, we think consent is sufficiently evidenced by the Board's acceptance of a bond executed by Dillon in the sum of $1,000 running to the State of Arizona and L. Ben Pearson, Sheriff of Navajo County, to faithfully perform such duties as may be imposed upon him by law in the discharge of the office of deputy sheriff. This bond was recorded in the office of the county recorder at the request of the Board of Supervisors."

In Stago, Dillon was appointed by the Sheriff of Navajo County and was, by necessity, under the control and supervision of an organization exercising security responsibilities. Neither of these facts exist in reference to Martin and Roth who were appointed by the County Attorney. In view of his work with Pinetop Merchant Patrol, it would seem that Dillon's primary duty was that of law enforcement and citizen security while Martin's and Roth's were not. Martin and Roth were in a sense bonded by the rider on the county insurance policy, but this was not reflected in the Office of the County Recorder.

The case which the State relies upon to the greatest extent is Boies v. Cole, 99 Ariz. 198, 407 P.2d 917 (1965). In the dissenting opinion on pages 208 and 209, 407 P.2d 917 the Sheriff's Card is reproduced and is identical with the cards carried by Martin and Roth except for the date, the picture, the name and the signature. Also the typed words read "Ambulance Service" instead of "County Attorney Investigator". Tony Silvio was the person who the plain-

tiff urged was a de facto deputy sheriff whose acts rendered the Sheriff liable in tort. Silvio's vehicle was privately owned as was the Roth vehicle. Silvio's vehicle, however, carried the regulation sheriff star on the exterior thereof. The Roth vehicle disclosed no official designation. The Board of Supervisors was officially cognizant of the fact that Silvio's service would include "the handling of prisoners and detention cases" upon request of the Sheriff's Office. There was no official notice to the Board of Supervisors that Martin and Roth would have anything to do with the service of warrants.

A portion of Silvio's compensation was paid out of the Sheriff's budget. All of the compensation for Martin and Roth was paid out of the budget of the County Attorney. Silvio's vehicle contained a radio by which he received instructions from the Sheriff's Office. There is no evidence that either Martin or Roth ever received instructions from the Sheriff's Office. Silvio made frequent arrests pursuant to court order and on instructions from a sergeant in the office of the Sheriff, the sergeant being assigned to the Mental Health Section of the Sheriff's Office. Again, Martin and Roth did not receive any instructions from the Sheriff's Office. Under these circumstances an "Ambulance Service" related to the functions and the responsibilities of the Office of the Sheriff. There is no such apparent relationship between the Sheriff and a "County Attorney Investigator".

It is our opinion that one of the vital elements in relation to being a de facto deputy sheriff is the matter of instructions from and control by the Sheriff or by some law enforcement or security organization or agency. This was totally absent in the present case. It is our opinion that the holding of a deputy sheriff card, which was not even exhibited to Allison or to the defendants, even when coupled with the insurance policy rider which was not shown to have been brought to the attention of the Board of Supervisors in their of-

ficial capacities, is not sufficient to constitute either Martin or Roth a public officer within the provisions of A.R.S. Section 13–541. We recognize that there may be value in having members of the staff of the County Attorney authorized to serve warrants of arrest. The Legislature has granted limited arrest authority to persons who are not full-time peace officers within the definition of A.R.S. Section 1–215. It is for the Legislature, however, to determine whether this grant of power should be given to any member of the staff of the County Attorney.

The trial court is affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.