574 P.2d 840

**STATE of Arizona, Appellant,**

v.

**Garvin Dale WHITE, Appellee.**

**No. 1 CA–CR 2395.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 15, 1977.

Rehearing Denied Dec. 9, 1977.

Review Denied Jan. 10, 1978.

Jay V. Flake, Navajo County Atty., Snowflake, by David W. Adams, II, Deputy County Atty., Holbrook, for appellant.

Ronald McKelvey, Yuma, for appellee.

## OPINION

EUBANK, Judge.

This appeal by the State raises several questions involving the search and seizure of an airplane and its cargo of approximately 1100 pounds of marijuana by officers of the Navajo County Sheriff's Office.

Appellee was indicted by the Navajo County Grand Jury for two alleged violations: Count I, possession of marijuana for sale (A.R.S. § 36–1002.06), and Count II, transportation of marijuana (A.R.S. § 36–1002.07), both felony charges. These charges were originally tried to a jury in August 1976, resulting in a hung jury and mistrial. Prior to the second trial date, appellee moved to suppress the marijuana, fingerprints taken from a thermos bottle, and items of identification seized from a wallet inside a zippered flight bag, on the basis that the search and seizure of the evidence taken from inside the airplane was unreasonable under the Fourth Amendment as having been conducted without a search warrant and without exigent circumstances. Following a suppression hearing on September 23, 1976, the trial judge ordered all the evidence suppressed, and the State appealed from that order pursuant to A.R.S. § 13–1712, subd. 7.

The facts are that at approximately 5:00 p. m. on February 19, 1975, the appellee, and another person who is not a party to this appeal, landed an Aerocommander two-motored airplane at a remote and isolated airstrip in the Chevalon Retreat area of Navajo County, located about 15 miles from Heber and about 50 miles from the County Courthouse in Holbrook, Arizona. Witness Robert Telfer, who lived in the vicinity heard and saw the plane, and he drove over to the airstrip to see if the occupants needed assistance. The two occupants of the plane requested a ride to a point on the road to Heber where they had observed their friend's Winnebago motor-home stuck in the mud. Telfer complied with the request but first went by Chuck Alexander's house, near the airstrip, to obtain his assistance since Alexander had a four-wheel drive vehicle. Alexander was not home, so Telfer put chains on his Ford pickup and drove the two men toward Heber. On the way they met Alexander who told them he had already pulled the motor-home out of the mud. When they parted, Alexander returned to his home located near the airstrip and plane. Apparently suspicious, he examined the plane, entered it and removed one brick, approximately a kilo, of marijuana from the cargo. He was armed with a rifle, and he fired a bullet through one of the tires flattening it. Alexander then went to Telfer's house to await his return.

In the meantime, Telfer had located the Winnebago, occupied by two additional men, and at their request Telfer led the motor-home far enough up the Heber road to avoid further trouble with mud. The four men then left the area for Heber or Overgaard for the announced purpose of getting something to eat. Telfer returned home, arriving there he estimates, at about 11:00 p. m. He was met by Alexander who informed him "that the Aerocommander wasn't going anywhere. He had shot a hole in the tire. And it was full of marijuana." Since there was no telephone in the area, Alexander drove to Heber and telephoned the sheriff's office reporting the events leading up to his discovery, his subsequent removal of the brick of marijuana from the airplane, and his shooting of the tire. This report was taken by Deputy Sheriff Chuck Ellison at 9:30 p. m., who immediately reported the complaint to his superior officer, requested a search for suspects and requested assistance to secure the airplane. He met Alexander at Heber, saw the brick of marijuana and followed him back to the airstrip and the plane, arriving there at approximately 10:00 to 10:30 p. m.

When Deputy Ellison arrived at the plane he looked in through the window and saw packages which according to his previous experience, appeared to be marijuana. He saw where Alexander had removed the brick. He could not smell marijuana, he said, because of the blowing wind. He stated that he did not enter the aircraft. Another deputy, Charles Payne, arrived to assist Ellison. He had been advised by radio that the plane was possibly loaded with marijuana and upon arrival, he inspected the marijuana seized by Chuck Alexander. He then checked the plane by looking inside with the aid of his flashlight. He saw what appeared to be bricks of marijuana inside bags. He opened the door, saw and smelled marijuana. He noticed a flight bag and plane registration and removed the flight bag. The bag contained a wallet identifying one of the men in the plane as Antenna-

ci. He radioed the descriptive information of the suspect found in the wallet to the Holbrook office. The deputies, and later the sheriff, searched the area and "staked out" the plane for the rest of the night to prevent it from being flown off and in the hope of arresting other individuals involved. During the early morning hours two of the men involved were arrested by deputies in the Payson area.

At about daybreak, Deputy Ellison drove into Holbrook in order to obtain a search warrant to search the plane. He arrived there between 8:30 and 9:00 a. m., ate breakfast, obtained the warrant and returned to the plane arriving at 10:00 to 10:30 a. m. Taking the evidence in the most favorable light to support the order to suppress, the evidence shows that the deputies at the plane had unloaded approximately one-half the marijuana cargo into a pickup truck before Ellison returned with the warrant at approximately 10:00 a. m. After he returned, the warrant was read and a copy was placed in the plane. The face of the warrant states that it was executed at 12:00 noon.

A fact issue raised on appeal is the ownership of the airstrip that the plane landed on. The State alleges that it was the private property of Chuck Alexander, while the appellee contends that it was private property but not owned by Chuck Alexander. The record is devoid of any substantial proof in this regard. Since both parties contend that the airstrip was private property it seems reasonable that the trial court also treated it as such. We will therefore treat the airstrip as private property[1] for the purpose of this appeal.

Other fact issues raised were what hour the warrant was actually delivered to the airstrip on February 20, 1975, and when the plane was unloaded in relation to the delivery of the warrant. Mrs. Mary Telfer testified that although she had no watch she was at the plane between 9:00 and 10:00 a.

---

1. No findings of fact were made by the trial judge and none were requested until after the judge had ruled suppressing the evidence. We must assume therefore that the motion for findings was denied since no specific ruling is included in the minute entries.

m., and saw the deputies unloading the plane. She also testified that she didn't know when the warrant arrived, but that her husband knew. Her husband, Robert Telfer, testified that most of the marijuana had been loaded into the back of a pickup truck by the time he and his wife arrived at the plane. When asked how long it was before Ellison arrived after he and his wife arrived at the plane, he answered "fifteen, twenty minutes or maybe more." The deputies contend that the unloading did not occur until the warrant arrived. The trial court obviously did not credit this claim by the sheriff's office and instead relied on Mr. and Mrs. Telfer's testimony. Under these facts it seems reasonable to say that the unloading commenced before the warrant arrived at the airstrip.

## I. STANDING

The first question raised by the State is whether the appellee had standing to contest the search and seizure of the contents of the plane since he was trespassing on private property and had abandoned the plane.

Since no findings of fact were requested or made, we must draw all inferences from the evidence in support of the trial court's order. In doing this we are faced with a conflict in the evidence. On the record a good case can be made that appellee and the others intended to flee Navajo County and had abandoned the plane; an equally good case can be made for the contrary argument. In such cases, the trial court must be upheld as the factfinder. A finding of "no abandonment" is necessarily implied in the trial court's suppression order.

The trespasser claim is more interesting. A.R.S. § 28–1743(B) declares it unlawful for a person to land an aircraft on lands of another without the landowner's consent, while A.R.S. § 28–1746 makes such violation a misdemeanor punishable by a fine, imprisonment, or both. As noted above, all parties contend that the airstrip was private land, but no evidence is included in the record regarding the ownership of the strip. Under such a record, we are of the opinion

that it would be improper to treat the appellee as a trespasser since there is a lack of proof of ownership of the strip and the burden of proving trespass was on the State.

■ Turning to the standing issue, we agree with the appellee that he does have sufficient standing to question the legality of the search and seizure of the plane and its contents. Although the record before us shows that the appellee was not present at the plane when it was searched, and that he alleged no proprietary or possessory interest either in the plane or its cargo, he was charged in Count I of the indictment with possession for sale of the seized marijuana. In *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the Supreme Court indicated that such a possessory charge was in itself sufficient to grant standing because it would be unfair to allow the government to allege possession as part of the crime charged and yet deny that there was possession sufficient for standing purposes. We agree and hold that appellee had standing to contest the search and seizure.

## II. THE AIRPLANE

A preliminary question to the consideration of Fourth Amendment search questions relates to just where an airplane fits into the United States Supreme Court's scheme of search and seizure law. We have been cited to no specific authority, nor have we found any decision where this question was addressed; consequently, we must rely on analogy.

The Supreme Court has dealt extensively with the search of motor vehicles and has created an exception justifying warrantless searches of automobiles under circumstances which would be unreasonable if a search of a home, business office or building were involved. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception has

been justified, in part, on the mobility of the vehicle oftentimes making the obtaining of a warrant impractical (*Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)), and in the diminished expectation of privacy which surrounds a motor vehicle:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as a repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view. [*Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974)].

In addition, "[A]ll states require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the conditions and manner in which motor vehicles may be operated on public streets and highways." *Cady v. Dombrowski, supra*, 413 U.S. at 441, 93 S.Ct. at 2528.

In our opinion the above reasons for a motor vehicle exception apply equally as well to an airplane. In *United States v. Sigal*, 500 F.2d 1118 (10th Cir., 1974), the court reached the same conclusion based primarily on the mobility of an airplane. Our Arizona Supreme Court has held that an airplane comes within the definition of a "vehicle" in A.R.S. § 36–1041 et seq., for the purposes of forfeiture, when it is used to transport marijuana. *State ex rel. Flournoy v. Mangum*, 113 Ariz. 151, 548 P.2d 1148 (1976). We therefore hold that the search and seizure rules applicable to motor vehicles are also applicable to airplanes.

## III. SEARCH AND SEIZURE

It is clear from the facts that there were several intrusions into the airplane: first by Chuck Alexander, then by Deputy Charles Payne, and finally by the deputies unloading the plane before the warrant arrived at the scene. The record shows that these intrusions were treated together in the trial court for the purpose of the suppression hearing. However, because differing rules apply, we will treat them separately.

## A. PRIVATE CITIZEN SEARCH

The record shows that Chuck Alexander, a private citizen,[2] removed a brick of marijuana from the airplane. This brick of marijuana was suppressed by the trial court's order. In our opinion the suppression of this brick was error. The rule stated by our Supreme Court in *State v. Rice*, 110 Ariz. 210, 516 P.2d 1222 (1973) is controlling:

The first issue raised on appeal is that the trial court erred in denying appellant's motion to suppress evidence. As to that issue, the appellant urges we ignore the longstanding decision of the United States Supreme Court in *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). That decision held illegally seized evidence is admissible when seized by a non-government agent who is not acting in concert with police. This type of activity and its fruits are not within the protection of the Fourth Amendment of the United States Constitution. We see no reason why this well-established rule of law should be disturbed. The State should not be condemned for the actions of a private individual and the courts do not, by using this evidence, condone the actions of the individual. [110 Ariz. at 211–212, 516 P.2d at 1223–24].

Here Alexander, acting on his own behalf, discovered that the plane was loaded with marijuana, removed a brick, contacted the sheriff's office, showed the brick to various deputies, and was responsible for the subsequent arrest of the appellant and seizure of the cargo. He certainly was a non-government agent who was not acting in concert with the police. *State v. Rice, supra*.

2. No allegation is made that Alexander was acting other than as a private citizen. The record shows he did have a sheriff's posse card, but that he was not a deputy sheriff pursuant to A.R.S. § 11–409, or *State v. Ovens*, 4 Ariz. App. 591, 422 P.2d 719 (1967).

## B. DEPUTY CHARLES PAYNE'S SEARCH

The records show that when Deputy Payne arrived at the airstrip to assist Ellison, he saw Alexander's brick of marijuana. He then went to the plane and using his flashlight, saw what appeared to him, based on his past experience, to be kilos of marijuana inside bags, opened the door, smelled marijuana, noticed the flight bag and registration, removed the bag finding a wallet inside and then broadcasted by radio the description of the person described in the wallet to other deputies as a suspect.

The rules for this search are well stated by our own Supreme Court in *State v. Sardo,* 112 Ariz. 509, 543 P.2d 1138 (1975) as follows:

Under the rationale of *Carroll v. United States* [267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)] supra, an officer may, when he has probable cause based upon a belief that a motor vehicle contains contraband (or "that which by law is subject to seizure and destruction"), search the vehicle and seize the contraband without a warrant if exigent circumstances are present. *State v. Harrison,* 111 Ariz. 508, 533 P.2d 1143 (1975). The apparent mobility of a motor vehicle presents a pressing need for a prompt search, i. e., an exigent circumstance. Exigent circumstances will justify the warrantless search of a motor vehicle where probable cause exists to believe that the motor vehicle contains contraband. *State v. Williamson,* 20 Ariz.App. 397, 513 P.2d 686 (1973); See also *State v. Lawson,* 107 Ariz. 603, 491 P.2d 457 (1971).

Exigent circumstances are found when "the vehicle can quickly be moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll,* supra, 267 U.S. at 153, 45 S.Ct. at 285, 69 L.Ed. at 551. Such was the situation in the instant case. The motor home vehicle, though not traveling on a highway, was occupied, mobile and located in close proximation to several jurisdictions.

However, the mere fact that a motor vehicle is in the area to be searched does not mean that the *Carroll* doctrine can be automatically invoked; officers must at least have "probable cause" for believing that the vehicle to be searched contains contraband or illegal merchandise. *State v. McCullar,* 110 Ariz. 427, 520 P.2d 299 (1974).

Probable cause must be measured by the facts and circumstances of each case. See *State v. Cofhlin,* 3 Ariz.App. 182, 412 P.2d 864 (1966). Here we view the facts and circumstances as to whether probable cause exists from the collective knowledge of all the law enforcement agents involved in this operation. *State v. Richards,* 110 Ariz. 290, 518 P.2d 113 (1974).

Information can be viewed in light of the fact that an officer relied upon his past experiences to interpret the actions of persons he had under surveillance. See *United States v. See,* 505 F.2d 845 (9th Cir. 1954). [112 Ariz. at 513–514, 543 P.2d at 1142–43].

*See also State v. Benge,* 110 Ariz. 473, 520 P.2d 843 (1974).

In the case *sub judice,* all the requirements of *Sardo* were met. Deputy Payne had probable cause. He had the information concerning the plane and its contents. He had seen the brick, he saw the plane, he saw through the window what to him looked like kilos of marijuana, he opened the door and smelled it. Furthermore, exigent circumstances were present. The circumstances were that the unattended plane with its cargo believed to be marijuana was on a remote airstrip late at night with at least four persons involved with the plane known to be somewhere in the area with available transportation. It is also important that at this point in time, no arrests had been made and, so far as the deputies knew, the four persons involved might reasonably show up at any time to contest possession of the airplane and its cargo.

We do not believe the fact that Alexander shot the tire changes the situation, since the airplane itself was not damaged. Tires are quickly changed or rapidly repaired.

Appellee argues extensively that because the airplane was parked on private

property he exhibited a "reasonable expectation of privacy." We disagree. As already noted under the "standing" issue, A.R.S. §§ 28–1743, 1746, declare it a misdemeanor to land a plane on private property without the owner's express permission. The record is devoid of any evidence that appellee had permission to land on the airstrip and no such claim is made by appellee. In his brief appellee acknowledges that he has no inkling who owned the airstrip, but alleges nevertheless that it was private property. However, there is no evidence in the record to place the airplane in any better legal position on the airstrip than the deputies who were summoned there by a private citizen who had discovered a cache of marijuana in the airplane.

■ In our opinion the "open field" exception first announced by Justice Holmes in *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) is applicable to the facts in this case. In *Hester,* officers observed the defendant from a distance on his father's land, carrying a jug and bottle of illegal whiskey. An alarm was sounded and the defendant dropped the contraband and fled. The officers, without a warrant, pursued defendant, collected the jug and bottle from the field and successfully used it as evidence in defendant's trial. Justice Holmes said that the Fourth Amendment did not extend to "open fields". This exception is still good law. *See Air Pollution Variance Board v. Western Alfalfa Corp.,* 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974).

In a case factually similar to ours, *United States v. Freie,* 545 F.2d 1217 (9th Cir. 1976), the officers arrived at the small airstrip near Young, Arizona, and discovered that the airplane reported to them as having landed, had departed. They observed, however, about 100 feet from the airstrip, a neat stack of cardboard boxes covered by a tarpaulin. The boxes were across a cattle fence on property leased for private use. One of the officers went over and opened one of the boxes discovering marijuana. The Ninth Circuit Court of Appeals, by a per curiam opinion, upheld the denial of the motion to suppress saying:

In *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), the court held that the protection provided by the Fourth Amendment to the people to be free from unreasonable searches and seizures in their "persons, houses, papers and effects" is not extended to open fields. In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the court held that the Fourth Amendment protects people, not "places." Ever since that decision, the determination of whether an intrusion is an unreasonable search has depended on one's actual subjective expectation of privacy and whether that expectation is objectively reasonable. See *Katz,* supra, at 361, 88 S.Ct. 507 (Harlan, J., concurring). Thus, the proper focus is no longer on common law property concepts. See *Wattenburg v. United States,* 388 F.2d 853, 857 (9 Cir. 1968). It now appears that *Hester* no longer has any independent meaning but merely indicates that open fields are not areas in which one traditionally might reasonably expect privacy. *United States v. Magana,* 512 F.2d 1169, 1170 (9 Cir. 1975); *Patler v. Slayton,* 503 F.2d 472, 478 (4 Cir. 1974).

*United States v. Pruitt,* 464 F.2d 494 (9 Cir. 1972), is factually similar to this case. In that case, Customs officials received a tip that a large cache of marijuana had been smuggled into California. Later, law enforcement officers observed individuals remove two large boxes from a van and place them in an area covered with underbrush. During two searches of the area, the officers uncovered boxes and duffel bags containing marijuana.

The court held that the defendant-appellant did not have a reasonable expectation of privacy with respect to the marijuana cache. The court distinguished *Wattenburg* on the grounds that the outdoor area was not adjacent to a home and that any casual passer-by would have access to the cache and could attempt to ascertain what the boxes and duffel bags contained. See also *United States v. Capps,* 435 F.2d 637 (9 Cir. 1970).

Hence, while it is possible that appellants had actual subjective expectations of privacy, those expectations were not objectively reasonable and the motions to suppress were properly denied. [545 F.2d at 1223].

In the case *sub judice,* Deputy Payne was in a similar position as the officers in *Freie,* except that he had stronger probable cause because prior to his approaching the airplane, he had seen the brick of marijuana taken from the plane. The *Hester* rule has been applied in Arizona in *State v. Caldwell,* 20 Ariz.App. 331, 512 P.2d 863 (1973). There, Division Two said:

In the instant case the four boxes containing marijuana were discovered in an area approximately 100 yards from the house beyond a fence and a corral area under some trees. Of special significance is the fact that the boxes were first discovered by the neighbor boy. This indicates that the boxes were in an area where someone from the general public was apt to wander. Under these circumstances, it would be unreasonable for defendants to assume that contraband in such an area would not be noticed and reported by some member of the public and investigated by the police. *See State v. Stanton,* supra. [7 Or.App. 286, 490 P.2d 1274 (1971)]. Thus, the protection of the Fourth Amendment, which normally would require a search warrant, does not come into play. [20 Ariz.App. at 335, 512 P.2d at 867].

### C. SEARCH BEFORE WARRANT ARRIVED

For the reasons stated in Section B above, the record shows that the deputies at the airplane could properly remove the marijuana cargo, the thermos bottle, and the flight bag from the airplane before the warrant arrived on the scene because the airplane had actually been impounded or seized at the time of Deputy Ellison's arrival at the plane and Deputy Payne's search of the plane. Appellee clearly established this fact of impoundment and seizure through his extensive cross-examination at the suppression hearing. Consequently, the fact that the deputies waited until "fifteen, twenty minutes or maybe more" before the warrant arrived to unload the seized cargo is irrelevant. If the search and seizure were proper, they were proper at the time of Deputy Payne's search and seizure. Having held his search proper, the removal of the cargo, etc., was proper; the fact that Deputy Ellison did not obtain a search warrant until the following morning adds nothing to the lawfulness of the search.

Our holding that the search and seizure did not violate Fourth Amendment requirements makes it unnecessary to consider other Fourth Amendment questions raised.

### IV. SPEEDY TRIAL

While this matter was pending disposition, appellee moved to dismiss the appeal based on his alleged denial of a speedy trial in violation of Rule 8, Rules of Criminal Procedure, 17 A.R.S. We denied the motion by our May 18, 1977, order. The issue has not been ruled on before by our Court, to our knowledge; consequently, we feel it necessary to state our reasons for denying the motion.

Appellee's first trial resulted in a mistrial on August 17, 1976, and a new trial was set for October 4. Rule 8.2(d) requires such a retrial to commence within 60 days of the mistrial. However, after the mistrial was declared, appellee filed a motion to suppress certain evidence described above, which was granted on September 28. The State then moved for a continuance, which was granted, and the trial court on its own motion entered a "stay" of further proceedings pending the State's contemplated appeal. The notice of appeal was actually filed on October 12, and the appeal proceeded through the filing of briefs with no complaint about the lack of any speedy trial until the motion to dismiss was filed in this Court on April 13, 1977.

Appellee claims, by his motion, that the trial court exceeded its authority both in granting the continuance and in issuing the stay because the failure to commence the retrial within 60 days after the mistrial

violated Rule 8.2(d) and entitled him to a dismissal with prejudice under Rule 8.6.

We note initially that this question involves solely an interpretation of Rule 8, Rules of Criminal Procedure, 17 A.R.S., and that no federal constitutional rights are alleged to have been violated. The present question is therefore one of Arizona law only.

The time limits of Rule 8.2(d) are subject to certain excluded periods as set forth in Rule 8.4. Subparagraph (a) thereof excludes "delays occasioned by or on behalf of the defendant . . . ." Here the appellee-defendant made a permissible motion to suppress certain evidence, which was granted by the trial court. Although this would normally be regarded as an interlocutory ruling only, the granting of such a motion has specifically been made appealable by the State by A.R.S. § 13–1712.

■ In our opinion, a motion to suppress is made in the context of the possibility of an appeal by the State if it is granted. Hence if the State does appeal from an order granting a defendant's motion to suppress, the time from the (timely) filing of the State's notice of appeal until the filing of the final appellate decision is an "excluded period" under Rule 8, as a delay occasioned on behalf of the defendant. To hold otherwise would negate the State's statutory right of appeal, because as a practical matter no appeal can be disposed of within 60 days after granting of a motion to suppress. It would also, as a practical matter, preclude review of suppression orders. The permissible time limits for transmitting the record and filing the briefs alone exceed 60 days. We believe that in order to harmonize the appeal provision of A.R.S. § 13–1712 with Rule 8, one being law and the other procedure, the time consumed by the appeal must be excludable. Excluding the time of the State's appeal in this case, there has as yet been no violation of Rule 8, and appellee's motion to dismiss the prosecution was therefore denied.

Appellant also questions whether Judge DeRose had jurisdiction to consider the motion to suppress evidence. We hold that under the facts in this case he did have jurisdiction to rule on the motion.

The order suppressing the evidence is reversed, and this matter is remanded for trial or other appropriate disposition of the charges.

NELSON, J., concurs.

SCHROEDER, Judge, concurring in part and dissenting in part:

I agree with the majority's resolution of the speedy trial issue, I agree that the brick of marijuana taken from the plane by a civilian should not have been suppressed, and that the appellant has standing to challenge the police search.

I cannot agree, however, with the majority's resolution of the remaining search questions, which, as presented by the State, concern whether the circumstances justified two warrantless searches of a plane, resulting in the unloading of its cargo and the securing of identification materials from inside a zippered flight bag.

The searches are upheld by the majority on two basic grounds. The first is that there were exigent circumstances justifying the warrantless searches of the plane. However, I find it difficult to perceive exigencies compelling immediate search of a plane parked on a remote airstrip, with a tire shot out, and under surveillance by the police. Even if the question of exigent circumstances could be regarded as a close factual question, it has been resolved in favor of the lack of exigent circumstances by the trial court's suppression order.

To the extent that the majority opinion suggests there are always exigent circumstances in connection with searches of the airplane, simply because it is a vehicle, the opinion is directly contrary to the law in this state. See e. g., State v. Sauve, 112 Ariz. 576, 544 P.2d 1091 (1976); State v. Sardo, 112 Ariz. 509, 543 P.2d 1138 (1975); State v. Bertram, 18 Ariz.App. 579, 504 P.2d 520 (1972). The United States Supreme

Court has recently reiterated the requirement of particular exigent circumstances in connection with warrantless vehicle searches. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

The other leg upon which the majority stands is the "open field doctrine". However, as the opinion in *United States v. Freie*, 545 F.2d 1217, 1223 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977), in the portion quoted by the majority points out, the open field doctrine as enunciated originally in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), "no longer has any independent meaning . . ." *Accord, State v. Caldwell*, 20 Ariz.App. 331, 335, 512 P.2d 863, 867 (1973). After the United States' Supreme Court's opinion in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the appropriate question has come to be whether those subjected to the search had a reasonable expectation of privacy. *State v. Caldwell, supra; Cf. State v. Dugan*, 113 Ariz. 354, 356 n. 1, 555 P.2d 108, 110 n. 1 (1976). In my view, there was such a reasonable expectation of privacy with respect to the contents of a closed airplane parked on a remote, isolated airstrip in northern Arizona. Again, if there were any doubt, it should be resolved in favor of the trial court's ruling.

Accordingly, I respectfully dissent from the portion of the court's opinion which upholds the removal by police of the contents of the plane without a warrant.