688 P.2d 1088

**In re the Matter of 1977 CESSNA 206, LICENSE NO. N756HQ, SERIAL NO. U20604107.**

**Joseph NUNEZ, Real Party in Interest-Appellant,**

v.

**STATE of Arizona, Appellee.**

**No. 1 CA–CIV 6530.**

Court of Appeals of Arizona, Division 1, Department D.

July 19, 1984.

Review Denied Sept. 27, 1984.

makes no difference here.

Thomas A. Thinnes, P.A. by Thomas A. Thinnes, Eleanor L. Miller, Phoenix, for real party in interest-appellant.

Robert K. Corbin, Atty. Gen. by Diane D. Hienton, Jessica Gifford, Asst. Attys. Gen., Phoenix, for appellee.

## OPINION

BROOKS, Presiding Judge.

This is an appeal from an order forfeiting the captioned airplane to the State of Arizona pursuant to A.R.S. § 36–1041 et seq.[1] Appellant has raised two issues:

1. The trial judge erred in denying appellant's motion to suppress.

2. The evidence was insufficient to support the judgment forfeiting the airplane.

## MOTION TO SUPPRESS

At the hearing on the motion to suppress, Officer Michael D. Stevens, Department of Public Safety (DPS), testified regarding the events surrounding the seizure and search of the aircraft which occurred at Sky Harbor Airport on April 15, 1981. Officer Stevens had been involved in the investigation of drug smuggling for approximately 6½ years. He was called to the airport to view the aircraft by a customs officer who had observed marijuana debris inside the aircraft.

Stevens testified that when he arrived at the airport he examined the aircraft in question at the request of the customs officer. When he viewed the inside of the aircraft through its windows, Stevens saw marijuana debris, including seeds and dust particles, on the armrests, windowsills and fuselage area of the airplane. Based upon his extensive experience with aircraft drug traffickers, he determined that the aircraft contained marijuana and that the aircraft was being used to transport or conceal marijuana whereupon he promptly seized and conducted a search of the aircraft.

---

1. References to the forfeiture statutes are to those in effect prior to their amendment effective July 1, 1981. Laws 1952, Ch. 57, § 7.

Stevens' testimony reveals that he disabled the aircraft by placing a "prop lock" on the propeller of the aircraft. He testified the "prop lock" would assist in disabling the aircraft by making it unstable in flight. He also immediately opened the cargo bay door and seized marijuana debris and seeds. Furthermore, he testified that the aircraft was of a configuration commonly used in aircraft smuggling. In that regard, the aircraft had been modified with a "STOL" kit, which was used to assist in short takeoffs and landings. In addition, fuel tanks were attached to the wing tips which increased handling performance and the range of the aircraft. Finally, Stevens observed that the rear two seats of the aircraft had been removed.

Appellant argues that whether Stevens had probable cause to believe the aircraft contained contraband was irrelevant because there were no exigent circumstances justifying the warrantless search. Appellant also argues that he had a reasonable expectation of privacy in the aircraft, even though it was parked at a public airport. Finally, appellant argues that the police should simply have secured the aircraft and obtained a search warrant before conducting a search.

The trial judge, in denying the motion to suppress, correctly applied the holding in *State v. White*, 118 Ariz. 47, 574 P.2d 840 (App.1977). There, this court held that the motor vehicle exception to the warrant requirement of the fourth amendment applied equally to airplanes. 118 Ariz. at 52, 574 P.2d 840. The court recognized that the exception was grounded both on the mobility of the vehicle and, more importantly, on "the diminished expectation of privacy which surrounds a motor vehicle." 118 Ariz. at 52, 574 P.2d 840.

In *United States v. Gooch*, 603 F.2d 122 (10th Cir.1979), the defendant argued that the warrantless search of his airplane was violative of the fourth amendment. 603 F.2d at 124. The court recognized that a parked airplane, whose occupants are removed, is arguably less mobile than a similarly situated automobile, but stated that "an airplane is even more mobile in terms of its ability to cover great distances in a short time and its capacity to move without being restricted to discrete roadways." 603 F.2d at 125. Furthermore, the court stated that there was no reasonable expectation of privacy when the airplane was at a public airport and its contents were within easy view through the airplane's door. *See also, United States v. Mackey*, 626 F.2d 684, 685–86 (9th Cir.1980) [the court held that *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), formulated a practical rule that does not draw fine distinctions among searches conducted after a car is stopped on a street or highway and those conducted at a later time and place]; *United States v. Bellina*, 665 F.2d 1335, 1341 (4th Cir.1981) [holding that the rule of limited or diminished expectation of privacy that exists in connection with automobiles has been consistently held to attach to airplanes].

The court in *Bellina*, noted that the rationale for the diminished expectation of privacy was not so much the vehicle's mobility as the fact that the vehicle was on public thoroughfares where both its occupants and contents were in plain view. 665 F.2d at 1340. In *Bellina*, the court reversed a finding by the district court that the defendants had a reasonable expectation of privacy in their airplane and that police officers had violated that expectation by peering into the plane by standing on its wings. There, as here, an officer observed the interior of an airplane parked and left in a public parking lot at a public airport. The court upheld the immediate search and seizure of the aircraft. *See also, Adoue v. State*, 408 So.2d 567 (Fla.1982). In *Adoue* the defendant argued that the court should have granted his motion to suppress because the officers conducted an illegal, warrantless search of his aircraft. He argued there were no exigent circumstances to justify the search. In *Adoue*, the officers looked through the window of the airplane and saw marijuana. Finding that the officers had viewed the marijuana debris inside the airplane while it was "in open view", the court concluded that the

officers had probable cause for the search. The court stated:

> The fact that the plane was parked and had been secured by the police does not render the *Carroll* exception to the warrant requirement inapplicable.

408 So.2d at 571.

■ We find that these decisions and *State v. White*, support the trial judge's determination in the instant case that the warrantless search of the airplane was justified. The officer testified that he viewed marijuana inside the aircraft. There was evidence that the aircraft was parked at a public airport and the officer had a right to be at the place where he viewed the marijuana. There was substantial evidence from which the trial court could have concluded that the officer saw marijuana inside of the airplane and, at that point, was authorized to conduct an immediate warrantless search of the aircraft. Therefore, we will not disturb the trial court's finding on appeal.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE JUDGMENT

Appellant argues that a vehicle cannot be forfeited under the laws of Arizona unless there is evidence produced to establish that the owner committed an unlawful act with the vehicle or that the owner intended to permit a third party to use the vehicle for an unlawful purpose or that the owner knew the vehicle was going to be used for an unlawful purpose by a third party. Appellant contends that his verified "response," denying "the unlawful use of the vehicle or any knowledge of the unlawful use of the vehicle," placed the burden on the state of proving that he had knowledge of the unlawful use of the airplane. Appellant attempts to distinguish the holding *In the Matter of 1977 Honda Motorcycle*, 131 Ariz. 179, 639 P.2d 369 (App.1981), by stating that "the ultimate burden of proof is upon the state, at least when a verified response is filed." He also argues that "once an innocent owner avows no knowledge of the illegal use of a vehicle subject to forfeiture, the burden shifts to the state to show otherwise."

Although appellant argues that the burden of proving lack of knowledge was on the state, we find that conclusion to be unsupported by the law in Arizona as well as other jurisdictions. Division 2 of this court *In the Matter of 1977 Honda Motorcycle* made the following observation:

> The question presented in this appeal is whether the state must prove the owner's scienter or whether this is in the nature of an affirmative defense. We believe it to be the latter. In the [*In re One 1965*] *Ford Mustang* [ 105 Ariz. 293, 463 P.2d 827 (1970)] case, the court observed that the statute, construed literally, permitted the interest of an innocent owner to be forfeited, but held that the legislature intended to permit such an innocent person to prove lack of scienter. Nowhere in the opinion is it suggested that the owner's knowledge is an additional element to be proven by the state. Appellant has not referred to any authority so holding. In the Matter of 1969 Ford Truck, 122 Ariz. 442, 595 P.2d 674 (App.1979) contains the following statement, with which we agree:

> "... if a claimant desires to raise defenses going to the underlying illegal use of the vehicle, *or to the claimant's lack of knowledge of such use*, he must file a verified answer under A.R.S. § 36–1044." (citation omitted)

131 Ariz. at 181, 639 P.2d 369.

The case law interpreting the forfeiture statute, and its statutory history, has consistently required the defendant to prove his lack of knowledge regarding the unlawful use of the property subject to forfeiture. *See,* Laws 1979, ch. 103, (adding A.R.S. § 36–2544(A)(4)(b) and repealing A.R.S. § 36–1041 *et seq.,*) and Laws 1981, ch. 264, (adding A.R.S. § 13–3409(A)(3)). These statutory enactments and *In the Matter of 1977 Honda Motorcycle,* leave little doubt that our legislature requires the "innocent" owner or claimant to carry the burden of proving his innocence or lack

200

of knowledge with respect to the forbidden use of the property. *See* A.R.S. §§ 13–106, 13–3409.

Applicable statutes in other states, as well as federal statutes (Sections 781–789, Title 49, U.S.Code), which have been upheld on numerous occasions, have gone even further than our statute. *See, e.g. Annot.* 50 A.L.R.3d 172 (1973). They have permitted forfeiture of vehicles used in the unlawful conveyance of controlled substances where the owner has not taken part and have held that any exception based upon a defense of lack of knowledge of the owner is a matter of grace on the part of the state and is not constitutionally required by due process. *State v. 1974 Chevrolet Camaro,* 7 Ohio.Misc.2d 39, 454 N.E.2d 991 (1983); *Fell v. Armour,* 355 F.Supp. 1319 (D.C. Tenn.1972). In *Fell,* the court found:

[N]o constitutional objections to placing the burden upon the owner to prove that he is entitled to recovery of the vehicle by virtue of any exemption or exception provided by the Act, § 52–1444. Under the current state of the law, no constitutional objections exist to the forfeiture of a vehicle once it has been used in violation of a forfeiture statute, *regardless of lack of knowledge or innocence of the owner....* (citations omitted)

Thus, under the weight of authority, any exception or exemption allowing recovery is a matter of grace on the part of the State and not constitutionally required by the Due Process Clause of the Fourteenth Amendment.

355 F.Supp. at 1331–32. (Emphasis added.)

Our legislature has clearly intended to place the burden of proving lack of knowledge of the unlawfulness of the use of the property on the owner or claimant. We find the history of the act, as set out above, to be instructive in arriving at this conclusion. In addition, the legislature is deemed to be aware of the court's decision *In the Matter of 1977 Honda Motorcycle* and it is presumed that the legislature, by retaining statutory language upon which the court's decision is based, approves of that interpre-

tation. *Altamirano v. Industrial Commission,* 22 Ariz.App. 379, 527 P.2d 1096 (1974). We note that A.R.S. § 13–3409 was amended by Laws 1983, ch. 258, § 1. No attempt was made to either amend that statute or A.R.S. § 13–106(G) that the claimant shall *prove,* "by a preponderance of the evidence," that the use of the offending property was lawful or that the unlawful possession or use was without consent of the claimant.

■ The legislative decision to place the burden of proving lack of knowledge on the owner or claimant furthers the legislative policy concerning the confiscation of vehicles used to transport contraband. The public interest must be protected against illegal drugs and the interest of the potential victims outweighs the losses suffered by those who permit the use their vehicles to facilitate drug related crimes. *State v. 1974 Chevrolet Camaro,* 454 N.E.2d at 993. Forfeiture statutes are enacted to curb the illegal transportation of narcotics and the forfeiture of vehicles used in such activities is a method deemed necessary by the legislature to restrain the commission of those offenses and to aid in their prevention. The legislature may reasonably conclude that it is legitimate and reasonable to suppose that owners will be more circumspect in permitting the use of their vehicles by others or in using their own vehicles when the illegal act may bring about the forfeiture of the vehicle.

■ We conclude that the legislature properly placed the burden of proving lack of guilty knowledge on the claimant opposing forfeiture. No evidence whatsoever was presented by the claimant in this case and, therefore, we find that the state presented sufficient evidence to support the trial court's judgment forfeiting the aircraft to the state.

For the foregoing reasons, the judgment of the trial court is affirmed.

GREER and CONTRERAS, JJ., concur.