**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Barry SIGAL, a/k/a Barry Edwards, a/k/a David Allen Spector, Defendant-Appellant.**

**No. 73–1934.**

United States Court of Appeals, Tenth Circuit.

Argued May 13, 1974.

Decided July 17, 1974.

Certiorari Denied Oct. 21, 1974.
See 95 S.Ct. 216.

Stephen K. Lester, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for plaintiff-appellee.

Robert I. Kalina, New York City (Christopher J. Redmond, Wichita, Kan., on the brief), for defendant-appellant.

Before LEWIS, Chief Judge, and Mc-WILLIAMS. and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a search and seizure case. Barry Sigal was convicted in a trial to the court of unlawfully possessing 445 pounds of marijuana with an intent to distribute in violation of 21 U.S.C. § 841(a)(1). Prior to trial, Sigal filed a motion to suppress the use upon trial of the 445 pounds of marijuana obtained by United States Customs Agents from his airplane in Liberal, Kansas, on the grounds that such was obtained in an unlawful search and seizure. Also, Sigal sought to suppress the use upon trial of certain statements he made to the arresting agents at the Liberal, Kansas, airport on the grounds that such had been made under duress and prior to the time he had been advised of his constitutional right to remain silent. After an extended evidentiary hearing, the trial court denied the motion to suppress.

When the matter came on for trial, Sigal waived his right to jury trial and the case was tried on the basis of various stipulations, which included the right of the trial court to consider the testimony given at the hearing on the motion to suppress. No other evidence was offered by either side. Based, then, on such evidentiary matter, the trial court

found Sigal guilty of having violated 21 U.S.C. § 841(a)(1). Sigal now appeals his conviction, and we affirm.

The principal matter on appeal is whether the Government obtained the 445 pounds of marijuana from Sigal's airplane at the Liberal, Kansas, airport in a search and seizure which had been tainted by a prior unlawful intrusion. Our study of the matter leads us to conclude that the search and seizure was a lawful one, even though no search warrant had ever been issued, because the search and seizure was based on probable cause under exigent circumstances which obviated any necessity to obtain a search warrant. The facts as developed at the hearing on the motion to suppress will be summarized briefly in order to give meaning to our conclusion.

Barry Sigal crossed the border into the United States from Mexico at El Paso, Texas, under circumstances which aroused the suspicion of the Customs Inspector. Among other things, Sigal tried to "palm" a key bearing a tag marked "N4270T." The inspector related the circumstances of Sigal's entry to one Jerald G. Weatherman, a special agent for the United States Customs. Weatherman was the only witness called by the Government at the hearing on the motion to suppress and this recital is necessarily based, in the main, on his testimony. Sigal did not himself testify at the suppression hearing, though he did call three employees of the Liberal Airport, who testified concerning Sigal's arrest.

Armed with the information which he had acquired from the Customs Inspector, agent Weatherman went to the El Paso International Airport and located a Piper Cherokee-6 airplane bearing the number "N4270T." Four of the six seats inside the Piper had been removed and approximately 20 flattened-out cardboard boxes and two large boxes that were sealed occupied the space where the seats had been. Weatherman watched this plane until late in the evening, when he was relieved by another agent.

Weatherman was advised the following day by the agent who had relieved him that the Piper had taken off about 2:30 A.M. and was followed by Customs Agents to the airport in Wilcox, Arizona, where somehow the agents lost contact with the Piper.

Shortly thereafter word was received that the Piper had landed in Holbrook, Arizona, and Weatherman proceeded at once to Holbrook where he observed the Piper bearing number "N4270T." Weatherman testified that he saw Sigal enter the Piper and take off. Weatherman followed Sigal in a Government plane to Long Beach, California. Weatherman was then called off the case.

About ten days later, Weatherman was contacted in El Paso by another Customs agent who informed him that numerous boxes had been loaded into Sigal's plane in Los Angeles, and that Sigal's plane had then taken off with a Customs aircraft in pursuit. Weatherman, as requested, took off in another Government plane and made visual contact with Sigal's plane and the other Customs aircraft near Holbrook, Arizona. The two Customs planes followed Sigal's airplane as it apparently headed towards Albuquerque, New Mexico. However, before reaching Albuquerque, Sigal's plane turned sharply to the left and landed at Grants, New Mexico, some ninety miles west and north of Albuquerque. The Customs planes maintained aerial surveillance for about an hour and then, when it became obvious that Sigal had landed for something other than refueling, they too landed. What happened thereafter in Grants, New Mexico, is of paramount importance.

Upon landing in Grants, Weatherman learned from airport employees that although Sigal had gone to a local motel, "he said he would be back as soon as it [presumably the plane] got cool." At this time Weatherman looked inside the suspect aircraft and saw numerous large cardboard boxes. Upon an inspection around the air vents, Weatherman detected what he described as the "strong

odor of marijuana." After revealing this fact to a fellow agent, Weatherman checked the door of the aircraft, which he found to be locked. However, upon further investigation, he found the front baggage compartment to be unlocked. Weatherman testified that he then opened this compartment, reached inside and opened one of the large cardboard boxes which had been sealed with masking tape. Inside the box Weatherman saw that which he believed to be some 20 pounds of marijuana. He later resealed the cardboard box and closed the baggage compartment. Weatherman and his fellow agent then waited for Sigal to return to his plane.

Sigal did not return to his plane until early the following morning, when it was just beginning to get light. Sigal then took off, followed shortly thereafter by the Government planes.

Sigal next flew to Liberal, Kansas, where he landed his plane. The Government planes landed very shortly thereafter. Sigal got out of his plane and was thereupon arrested by the Customs agent. Weatherman testified that he identified himself as an agent and inquired as to what was in the plane, to which Sigal replied, "grass." Weatherman then asked if he could have the key so as to search the Piper, to which inquiry Sigal stated that the aircraft was unlocked. Weatherman thereupon searched the Piper and removed cardboard boxes containing some 445 pounds of marijuana.

As indicated, Sigal did not testify at the hearing on the motion to suppress, though he did call as witnesses three employees from the Liberal, Kansas, airport. Each testified as to what he saw and heard at the time of the arrest, with emphasis being made of the fact that at least some of the Customs agents drew their guns.

The main thrust of Sigal's search and seizure argument is that Weatherman's search of Sigal's plane in Grants, New Mexico, was an unlawful one, and that the subsequent search and seizure in Liberal, Kansas, was thereby rendered unlawful under the fruit of the poisonous tree doctrine. Wong Sun v. United States, 371 U.S. 471, 83 S.St. 407, 9 L.Ed. 2d 441 (1963). Let us now analyze Weatherman's search of Sigal's plane in Grants, New Mexico.

Weatherman's search and inspection of Sigal's aircraft in Grants, New Mexico, was conducted without the sanction of a search warrant. However, the absence of a search warrant does not necessarily mean that Weatherman's search of Sigal's plane was unreasonable under the Fourth Amendment. Under the authorities, if Weatherman's search was in fact based on probable cause and if there existed exigent circumstances which made impractical and unreasonable the obtaining of a search warrant prior to conducting a search of Sigal's aircraft, then Weatherman's search was not itself unreasonable, and was lawful. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and United States v. Pollard, 466 F.2d 1 (10th Cir. 1972), cert. denied, 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973). Before considering the issues of "probable cause" and "exigent circumstances," as such relate to the facts of the instant case, we do note that we are not here concerned with a search of a home, but of an airplane, which certainly is as mobile, if not more so, than an automobile. The search of an automobile, for example, is far less intrusive on Fourth Amendment rights than the search of one's person or home. Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); and Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Clearly, then, the mobility of the thing searched in the instant case is a most significant factor in determining whether Weatherman's search of Sigal's aircraft was constitutionally permissible.

Our study of the record leads us to conclude that Weatherman did have probable cause to search Sigal's aircraft in the airport at Grants, New Mexico. Weatherman knew of the suspicious circumstances under which Sigal crossed the border in El Paso, Texas. Weatherman then himself followed Sigal all over the southwest. The facts concerning Sigal's suspicious conduct prior to his flight from Los Angeles to Grants have not been detailed in this opinion, but they are in the record, and may of course be considered in our determination as to whether Weatherman had probable cause when he searched the plane in Grants, New Mexico. In the light of Sigal's prior suspicious conduct, any possible doubt as to probable cause was dispelled when, at the Grants airport, Weatherman detected the strong odor of marijuana emanating from the vents of Sigal's aircraft. Under such circumstances, Weatherman indeed had probable cause to believe that marijuana was in Sigal's aircraft. United States v. McCormick, 468 F.2d 68 (10th Cir. 1972), cert. denied, 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973); United States v. Miller, 460 F.2d 582 (10th Cir. 1972).

Counsel argues that even assuming the existence of probable cause, the search was an unlawful one inasmuch as there were no exigent circumstances which prevented Weatherman from obtaining a search warrant before searching the plane. It is agreed that the nearest available Magistrate was in Albuquerque, New Mexico, 90 miles distant from Grants. Counsel in this regard emphasizes that Sigal was in Grants, New Mexico, for approximately 15 hours before departing for Liberal, Kansas, which provided ample time for Customs agents to drive to Albuquerque and obtain a search warrant.

Much of counsel's argument on the lack of exigent circumstances is based on 20/20 hindsight. Based on all of the facts and circumstances, the trial court concluded that exigent circumstances did exist. We agree. In fact, the trial court's findings adequately sum up our views on the matter, and we repeat them here. In this connection the trial court commented as follows:

"Probable cause by itself does not justify a warrantless search. In addition, there must be 'exigent circumstances' which preclude the securing of a warrant. The testimony shows that a period of as long as fifteen hours intervened between the time Agent Weatherman searched the baggage compartment and the time defendant departed the Grant-Milan airfield. Retrospectively, it appears one of the surveilling agents could have driven or flown to Albuquerque, some 160 miles round-trip distance, and procured a warrant. However, the Court is concerned with the facts and circumstances as they appeared to the agents at the time. The prime fact to be considered is the airplane which defendant was flying. An airplane is exceedingly mobile and can carry its pilot for great distances in any direction. Moreover, the agents had no inkling as to defendant's schedule, he could have returned and departed at any time. Secondly, the agents did not know if defendant was acting alone. Someone else could have appeared and either unloaded the plane or taken off. Consequently, the agents not only had to be concerned with the defendant, but also with the possibility of others appearing on the scene. Thus, they could not afford to disengage an agent or an airplane. Finally, there is the testimony as to the weather conditions that night. Apparently there were storms in the area which would have made flying hazardous. Combined, these facts and circumstances were of such exigency as to obviate the necessity for a warrant. Here, there is presented the classic case of law enforcement officials confronted with a highly mobile vehicle and complete uncertainty as to its future use or ultimate destination. These facts and circumstances likewise are well within the holdings in *Miller* and *McCormick*."

As indicated, in the main counsel challenges the presence of exigent circumstances. In this regard, with reference to the Government's lengthy surveillance of Sigal, any suggestion that exigent circumstances cannot be claimed at the time of the search in Grants because, well before that time, the agents were purportedly aware of probable cause sufficient to seek a search warrant, but did not do so, is fully answered in the Supreme Court's most recent automobile search case, Cardwell v. Lewis, *supra*. We agree with the following observation from Justice Blackmun's plurality opinion: "Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment."

In sum, then, for the reasons set forth above, we conclude that Weatherman's search of Sigal's plane in Grants, New Mexico, was not offensive to the Fourth Amendment and that he could have, if he had been so inclined, seized the marijuana at the Grants airport and proceeded to arrest Sigal forthwith. The fact that he determined to continue the pursuit a bit further to see what developed does not render his search and inspection of Sigal's plane improper. Accordingly, what thereafter occurred at the airport in Liberal, Kansas, was not the fruit of any tree that had been poisoned in Grants, New Mexico.

Nor do we believe that Sigal's arrest in Liberal, Kansas, or the search of his plane at the airport in that city were themselves constitutionally infirm. For all the reasons set forth above, the Customs agents had ample probable cause to arrest Sigal without first obtaining a search warrant. And the ensuing search of his plane was justified under such authorities as Chambers v Maroney, *supra*; Carroll v. United States, *supra*; and United States v. Pollard, *supra*.

To reiterate, we deem the search and seizure matter to be the real issue in this appeal. The other matters argued here are in our view minor and merit no particular mention. It should be remembered that this case was by agreement tried to the court on the basis, in the main, of testimony adduced at the hearing on the motion to suppress. At such hearing, there was no error in permitting Weatherman to relate information which he had acquired from other Customs agents in determining the question of probable cause. *Cf.* United States v. McCoy, 478 F.2d 176 (10th Cir. 1973), cert. denied, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973). Nor was there any error at the hearing on the motion to suppress in the trial court's refusing to let counsel inspect a report which Weatherman had not himself prepared, and to which he apparently referred for the limited purpose of refreshing his memory as to a proper name. Lastly, any possible error in connection with Sigal's statement at the time of his arrest that he had "grass" in his plane, which under the circumstances is difficult to see, is harmless beyond reasonable doubt. Accordingly, we need not here be concerned with whether the utterance was voluntary, or made under duress. Independent of this one word utterance is overwhelming evidence that Sigal did in fact possess 445 pounds of marijuana. And the quantity involved permits the inferences that he possessed the marijuana with an intent to distribute it. United States v. King, 485 F.2d 353 (10th Cir. 1973).

Judgment affirmed.