**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Daniel GOOCH, Jr.,**
**Defendant-Appellant.**

**No. 78–1489.**

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 6, 1978.

Decided July 10, 1979.

Rehearing Denied Aug. 22, 1979.

and anticipate its location based on its course and speed. In addition, the officer contacted several law enforcement agencies and requested a Customs' pursuit airplane to seek interception of the unidentified aircraft. Thereafter, the aircraft being tracked crossed the border. The ensuing chain of contact with the suspect aircraft by radar, the pursuit airplane, and a Customs' helicopter, although not without breaks of varying duration, eventually led to Alameda Airport in Albuquerque. There the suspect aircraft landed and was observed taxiing. In close succession, defendant jumped from the plane and began running away, a bag fell out with him, and the plane accelerated and turned around as if to take off. The airplane was then stopped, defendant caught and arrested, and the pilot placed under arrest. The officers observed through the door left open by the pilot several large bags and smelled marijuana coming from the interior of the airplane. A search of the airplane revealed 1,185 pounds of marijuana.

Richard Oseran, Bob Barber, Jr., Tucson, Ariz., for defendant-appellant.

R. E. Thompson, U. S. Atty., and David N. Williams, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Defendant seeks reversal of his conviction for possession of marijuana, contending that his arrest and the search which uncovered the marijuana were illegal.

Trial was to the court.[1] The following recitation of facts is based largely on the findings made by the court.[2] At about 8:35 p. m. on December 3, 1977, a United States Customs air officer operating a computerized radar scope detected a northerly moving aircraft, estimated to be 32 miles south of the border between the United States and Mexico. The officer then initiated a computer track designed to follow the craft

■ On appeal, defendant first argues that there was not probable cause to arrest him or to stop the airplane. This argument centers on the claimed insufficiency of the chain of contact between the time when the unidentified aircraft was first picked up on radar 32 miles south of the border and the spotting of the plane on the Albuquerque runway. While the record does not compel a finding that the aircraft which was stopped and searched was the same one originally observed, the testimony concerning sighting and tracking was more than sufficient to justify the trial court in its conclusion that the officers had probable cause to believe the aircraft originally picked up on radar was the same one finally stopped and searched. Indeed, the trial court was very discriminating in its weighing of the evidence. It concluded that the evidence did not establish beyond a reasona-

---

1. Pursuant to agreement of the parties, the trial court made its judgment on the basis of a record consisting of certain stipulations, the transcripts of defendant's preliminary hearing and the hearing on his motion to suppress, and exhibits introduced at the two hearings.

2. The findings of fact recited in this portion of the opinion are not challenged on appeal.

ble doubt that a border crossing occurred, but it did conclude that the chain of contact, under the circumstances, was sufficient to establish that the officers had probable cause to believe that the aircraft had entered from Mexico without notification of a border penetration and that it might therefore be carrying contraband. While the defendant had an explanation, which could be characterized as innocent, for his expeditious exit from the airplane and the airplane's suspicious maneuvers, viewed from the perspective of the officers, this activity further bolstered the conclusion that there was probable cause for stopping the aircraft and arresting the defendant.

In short, at the time of stopping the plane and arresting defendant there were "facts and circumstances 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The trial court's conclusion that there was probable cause to stop the plane and to arrest defendant was therefore correct.

■ Defendant additionally argues that the warrantless search of the aircraft was in violation of the Fourth Amendment. The government, of course, had the burden of justifying the warrantless search. *E. g., Chimel v. California*, 395 U.S. 752, 762, 89 S.Ct. 404, 21 L.Ed.2d 372 (1969). The trial court held that the search was supported by probable cause and therefore not violative of the Fourth Amendment. However, it is settled that probable cause alone is not constitutionally sufficient to sustain a warrantless search unless one of several narrowly-drawn exceptions applies to a particular case. *E. g., Chimel v. California*, 395 U.S. at 762, 89 S.Ct. 404; *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Nonetheless, the government argues that we should affirm defendant's conviction because the warrantless search of defendant's airplane was permissible under the doctrine of *Chambers v. Maroney*, 399 U.S. 42, 90

S.Ct. 1975, 26 L.Ed.2d 419 (1970). In light of the fact that the trial court did not hold the warrantless search legal on this basis, and given the fact that the government had the burden of proving the applicability of an exception to the warrant requirement, we will affirm defendant's conviction on the ground that the warrantless search was justified as within *Chambers* only if the record clearly so indicates.

In *Chambers v. Maroney* the Supreme Court ruled that it was constitutionally permissible to conduct, based on probable cause, a warrantless search of an automobile stopped on a public highway. Given the propriety of confining the vehicle in the first instance, it made no constitutional difference to the Court whether the automobile was held pending a search warrant or immediately searched. 399 U.S. at 52, 90 S.Ct. 1975. Although the *Chambers* opinion utilizes "exigent circumstances" analysis and focuses on vehicular mobility, the case was not decided on the basis that the automobile in question was in fact capable of being removed at the time it was searched. Indeed, it was secured at the police station when the search occurred. *Id.* at 44, 52, 90 S.Ct. 1975. While the *Chambers* court observed that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search," *id.* at 51, 90 S.Ct. at 1981, the Court apparently was concerned about inherent rather than actual vehicular mobility at the time of the search. *See id.* at 52, 90 S.Ct. 1975. The Supreme Court has subsequently explained the permissibility of warrantless automobile searches when there is little possibility the car will be removed or tampered with in terms of "the diminished expectation of privacy which surrounds the automobile." *United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

This Court has previously held the rule of *Chambers* applicable to airplanes as well as to automobiles. *United States v. Sigal*, 500 F.2d 1118 (10th Cir.), *cert. denied*, 419 U.S. 954, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974). Although a parked airplane whose occu-

pants are removed is arguably less mobile than a similarly situated automobile—given the relatively few persons capable of piloting an airplane—an airplane is even more mobile in terms of its ability to cover great distances in a short time and its capacity to move without being restricted to discrete roadways. In terms of mobility, then, airplanes are logically encompassed within the *Chambers* doctrine.

Insofar as the *Chambers* rule turns on the reduced expectation of privacy one has in his automobile, most of what was said in *Chadwick* concerning automobiles applies to airplanes as well. Thus, an airplane's "function is transportation and it seldom serves as one's residence or as the repository of personal effects." 433 U.S. at 12, 97 S.Ct. at 2484. Although it does not travel "public thoroughfares where both its occupants and its contents are in plain view," *id.,* it ordinarily lands at airports open to the public where its occupants and contents are similarly visible. The pervasive regulation of automobiles and their drivers, *see id.* at 12–13, 97 S.Ct. 2476, is even exceeded by the regulation of airplanes and their pilots. Moreover, such privacy expectation as one may reasonably have in the contents of his airplane in other circumstances is diminished when, as in this case, those contents consist of cargo which is to be unloaded at a public airport and which is within easy view through the airplane's door. We hold that the search of defendant's airplane and seizure of the marijuana was permissible.[3]

We note that the evidence which defendant sought to have suppressed included the contents of a briefcase found on board the plane. The briefcase was opened and searched by the officers as they conducted the search of the airplane. Since it was an item of personal luggage, there was a much greater expectation of privacy in the contents of the briefcase than in the contents of the airplane generally. *See United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In contrast to the briefcase, it was clear from the surrounding circumstances, including the nature and quantity of the plastic containers, that the sacks which contained the marijuana were mere cargo rather than personal luggage. The warrantless search of the briefcase was unconstitutional under the clear authority of *Chadwick* and *Arkansas v. Sanders,* —— U.S. ——, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Once the officers seized the briefcase, there being no exigency shown which would justify a warrantless search of its contents, a warrant was required to open and search it. —— U.S. at ——, 99 S.Ct. at 2594; 433 U.S. at 15–16, 97 S.Ct. 2476.

Although defendant argued below that the search of his briefcase was unconstitutional without regard to the validity of the airplane search, he has not pressed this point on appeal. We assume that his present silence results from his belief that

---

**3.** In this case, there was no real possibility the plane could have been removed pending application for a search warrant. By the officers' own testimony, the area was "secured" by ten armed men possessing an arsenal that included machine guns. Record, vol. 2, at 107. The plane's occupants were handcuffed and lying on the ground some forty feet from the plane.

To the extent that mobility rather than privacy is the key in this area, it is troubling that inherent as opposed to actual mobility is determinative. The explanation for this departure from judicial insistence on a warrant whenever obtaining one is practical is the *Chambers* court's questionable conclusion that once a vehicle has been secured and thus seized, the vehicle may as well be searched, since the search is not clearly a qualitatively greater intrusion. *See* 399 U.S. at 51–52, 90 S.Ct. 1975. We share Mr. Justice Harlan's belief that "in

the circumstances in which this problem is likely to occur, the lesser intrusion will almost always be the simple seizure of the car [or other vehicle] for the period . . . necessary to enable the officers to obtain a search warrant." 399 U.S. at 63, 90 S.Ct. at 1987 (separate opinion of Mr. Justice Harlan). We are foreclosed from implementing Mr. Justice Harlan's view that once a vehicle is secured, there is no exigency obviating the need for a warrant. Although the primacy of this general approach has been recognized by the Court in cases where the thing seized was incapable of performing a transportation function, the *Chambers* rationale apparently still governs where vehicles are concerned. *See Arkansas v. Sanders,* —— U.S. ——, —— n.14, 99 S.Ct. 2586, 2594 n.14, 61 L.Ed.2d 246 (1979); *United States v. Chadwick,* 433 U.S. 1, 13 & n.8, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

the error in ruling the briefcase evidence admissible was harmless. Although the warrantless briefcase search is troubling, we will not revive an issue which has been deliberately abandoned on appeal.

The judgment below is affirmed.

### ON PETITION FOR REHEARING

Although we do not find persuasive the arguments defendant makes in urging us to rehear this appeal, we believe another development should be addressed in denying the request for rehearing.

Subsequent to the filing of our opinion in the instant case, the Supreme Court summarily vacated the judgment in *People v. Robbins*, No. 1/Crim 14387 (Cal.Ct.App. May 9, 1978) and remanded "for further consideration in light of *Arkansas v. Sanders*, —— U.S. ——, 99 S.Ct. 2586, 61 L.Ed.2d 235." *Robbins v. California*, —— U.S. ——, 99 S.Ct. 3093, 61 L.Ed.2d 870 (1979). This action gives us pause because the lower court opinion in *Robbins* states that the vehicle search in question revealed "two securely wrapped bricks of marijuana and a tote bag containing another 2.2 pounds of marijuana."[1] *People v. Robbins*, slip op. at 3.

Although we considered the search of defendant's briefcase in the instant case to be governed by *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders*, —— U.S. ——, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), we judged the warrantless search of the large plastic sacks containing marijuana to be beyond the scope of those cases. We believe that distinction was appropriate under *Chadwick* and *Sanders*. We decline to read into the summary Supreme Court action in *Robbins* the implicit adoption of a *per se* rule that would hold a warrant required before *any* form of container or package found in a vehicle could be searched.[2]

In *Sanders*, the Court focused on the fact that what had been searched without a warrant was "luggage" and emphasized the fact that "luggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." —— U.S. at ——, 99 S.Ct. at 2592. We believe *Sanders* justifies our distinction between the briefcase and the mere cargo involved in this case. We reaffirm our decision that the reduced expectation of privacy in that cargo justified its warrantless search.

We should not be understood as using the term "mere cargo" in some talismanic sense or as a substitute for reasoned analysis. For example, if the marijuana in the case before us had been contained in double-locked footlockers upon which had been stenciled in two-inch red letters "Contents Private—Keep Out," it would have been accurate in one sense to refer to the lockers collectively as "cargo." It is not likely, however, that we would have found a warrantless search of the lockers constitutional. The reason is that affirmative steps to insure privacy would have been taken; it would have been inaccurate to characterize the footlockers as *mere* cargo, even though the number of footlockers might have indicated the likelihood that what was involved was some mass shipment.

The focus in all such cases is on the party's reasonable expectation of privacy in a particular item,[3] a concept which has been

---

[1]. At another point in the opinion the court refers to the search as extending to "the contents of various packages and suitcases found in the interior and luggage compartment of the vehicle." *People v. Robbins*, slip op. at 5.

[2]. Writing in dissent in *Sanders*, Justice Blackmun indicated that the decision had announced no such *per se* rule: "Still hanging in limbo, and probably soon to be litigated are the briefcase, the wallet, the package, the paper bag, and every other kind of container." *Arkansas v. Sanders*, —— U.S. at ——, 99 S.Ct. at 2595.

[3]. We agree with Justice Blackmun's dissenting observation in *Sanders* that it will not always be a simple matter for law enforcement officials to determine which containers or other items found in a vehicle "may be searched immediately, and which are so 'personal' that they must be impounded for future search only pursuant to a warrant." —— U.S. at ——, 99 S.Ct. at 2597. However, making such determinations is not a function that officers need undertake. The simple solution for the officer is this: When in doubt, get a warrant.

elaborated on in the case law. *See, e. g., Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In view of the number and nature of the sacks involved in the case before us and their ready visibility through the open door of defendant's airplane, we have simply concluded that defendant had in them no privacy interest that mandated procurement of a search warrant under the facts of this case.

The petition for rehearing is denied.

