408 So.2d 567 (1981)
Victor ADOUE, Appellant,
v.
STATE of Florida, Appellee.
Jerome WEXLER, Appellant,
v.
STATE of Florida, Appellee.
Nos. 56279, 56222.
Supreme Court of Florida.
December 3, 1981.
Rehearing Denied February 8, 1982.
*568 Larry G. Turner of Turner & Morris, Gainesville, for Adoue.
Selig I. Goldin of Goldin & Cates, Gainesville, for Wexler.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
ALDERMAN, Justice.
Appellants, Victor Adoue and Jerome Wexler, having entered pleas of nolo contendere and reserved their rights of appeal, were each sentenced in accordance with their negotiated plea agreements for the offense of bringing cannabis into the State of Florida. We have jurisdiction of these consolidated appeals because the trial court *569 upheld the constitutionality of section 893.13(1)(d), Florida Statutes (1977), a provision of Florida's Comprehensive Drug Abuse Prevention and Control Act. Art. V, § 3(b)(1), Fla. Const. (1972).
Appellants argue that section 893.13(1)(d) constitutes an unconstitutional attempt to delegate legislative authority to the federal government in violation of article II, section 3, and article III, section 1 of the Florida Constitution, that the trial court erred in denying their motion to dismiss the charges against them, and that the warrantless search of their airplane and the seizure of marijuana was unreasonable. We find no merit to any of these arguments, and we affirm the judgment of the trial court.
Factually, it appears that one drizzly evening a twin-engine Beechcraft airplane landed at the Gainesville Municipal Airport without first obtaining clearance from the air traffic controller as required by federal regulation under the existing visibility conditions. The air controller saw the plane taxi to the north ramp and park in the vicinity of the Sopwith Camel, Inc., a private field-based operation. The air controller called the pilot by radio to determine whether there was an emergency or radio failure. Receiving no response from the pilot, the air controller called the Sopwith Camel and requested them to have the pilot call the air control tower when he came into the hangar office. When the pilot did not appear, two employees from the Sopwith Camel went to the parking area immediately to the east of the hangar to see if they could locate the pilot. The employees did not find the pilot at the plane but in investigating his whereabouts detected what they believed was the odor of marijuana emanating from inside the aircraft. They notified the air controller who in turn notified the police.
Police officers arrived a short time later and were escorted to the plane by Sopwith Camel employees. With the aid of a flashlight, the officers examined the plane and through its window observed a number of white plastic garbage bags inside the plane. The officers testified that they saw a tear in one of the bags located near the window which revealed a green, leafy substance they believed, based on their law enforcement training and experience, to be marijuana. After seeing the rip in the bag through the window, one of the officers opened the door to the plane, but he did not enter the plane at that time. The officers then secured the airplane and awaited the arrival of the narcotics unit. Then, when the additional officers arrived, they entered the airplane and seized a large cargo of marijuana.
Initially, appellants argue that section 893.13(1)(d) is unconstitutional because it constitutes an unlawful attempt to delegate legislative authority to the federal government in violation of article II, section 3, and article III, section 1 of the Florida Constitution.[1] Section 893.13(1)(d) provides in pertinent part:
(d) It is unlawful for any person to bring into this state any controlled substance unless the possession of such controlled substance is authorized by this chapter or unless said person is licensed to do so by the appropriate federal agency. (Emphasis added).
Appellants maintain that this emphasized portion purports to authorize the federal government to define criminal acts in Florida in contravention of the long-standing principle that the legislature may adopt existing but not future legislation or administrative rules of jurisdictions outside of Florida. Freimuth v. State, 272 So.2d 473 (Fla. 1972).
*570 The delegation doctrine is grounded on the constitutional maxim that the legislature has the sole authority and responsibility to make the laws. State v. Atlantic Coast Line Railway Co., 56 Fla. 617, 47 So. 969 (1908). Unless the constitution otherwise authorizes, the legislature cannot delegate this responsibility to any other person or body. State v. Welch, 279 So.2d 11 (Fla. 1973). The legislature may, as it has in the past, adopt the regulatory and statutory standards of the federal government, but these standards must be in existence at the time of the adoption. Any attempt to incorporate a law as part of this state's body of laws prior to its creation by the appropriate federal authority is an unconstitutional delegation of the legislative power. Florida Industrial Commission v. State, 155 Fla. 772, 21 So.2d 599 (1945).
We hold that the challenged statutory provision does not constitute an unlawful delegation of legislative authority. Florida's comprehensive drug abuse act enumerates at length the substances which are controlled and describes in detail the criminal offenses relating to these substances. The act also delineates those persons who are excluded from criminal liability. In various sections of the act, practitioners, pharmacists, hospitals and others have been excluded from liability. Section 893.13(1)(d) excludes those persons holding controlled substances pursuant to a federal license.[2] The legislature, by allowing this exclusion, does not delegate substantive lawmaking ability to the federal government any more than it delegates that ability to a medical practitioner under section 893.13(1)(e). The conduct proscribed by the statute involved here has been completely defined by the Florida legislature; the range of criminality does not change in the future with shifting federal standards.
Appellants next contend that the charges against them should have been dismissed because the definitional section of chapter 893 proscribes only the species of cannabis sativa, L., and the state is unable to prove that the cannabis seized in this case is this species and not one of several separate species of cannabis. We have previously rejected this argument in our recent decision of Hamilton v. State, 366 So.2d 8 (Fla. 1978). We hold that section 893.02(2), Florida Statutes (1977), defining "cannabis" as the species cannabis sativa, L., and "all varieties thereof" includes all species of the cannabis plant.
Finally, appellants contend that the marijuana was illegally seized because it was not seized pursuant to a search warrant and that no exigent circumstances justified the warrantless search. The trial court denied the motion to suppress the marijuana seized from the airplane on the basis of the "plain view" exception to the warrant requirement. It concluded that the officers saw what they thought or believed to be, in their training and experience, marijuana. The "plain view" exception, however, does not apply to the factual situation before us. Here we have what would be considered a pre-intrusive situation under our recent analysis in Ensor v. State, 403 So.2d 349 (Fla. 1981), where the officers observed contraband in "open view."
In Ensor, we explained the confusion engendered by the courts in their varying usages of the concept of plain view. Plain view, we said, is often confused with the concept of open view. The plain view doctrine as an exception to the warrant requirement as described in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), provides the reasonableness for a search and seizure and applies where an officer observing contraband is legally inside, by warrant or warrant exception, a constitutionally protected area when he inadvertently observes contraband within the protected area. It is in this situation that an officer may constitutionally seize contraband in "plain view" from the constitutionally *571 protected area. The pre-intrusive situation exists where an officer is located outside a constitutionally protected area and is looking inside that area. In Ensor, we determined that if an officer observes contraband in this situation in "open view," this only furnishes him probable cause to seize the contraband. Either he must obtain a warrant or an exception to the warrant requirement must exist to justify his entry into the protected area and his seizure. The police officers in Ensor saw a firearm in "open view" through an open car door. This viewing, we said, gave them probable cause to believe that a felony was being committed. Since the officers had no warrant, the question, therefore, remained as to whether some exception to the warrant requirement justified the search and seizure. We held that under the Carroll exception for movable vehicles, the officer was legally justified in seizing the firearm from the automobile.
In the present case, when the officers looked through the window of the airplane and saw the marijuana, they stood in a nonconstitutionally protected area where they had a lawful right to be. In fact, they were where they had a duty to be since it was their responsibility to investigate the surreptitious landing of the plane and the apparent disappearance of the pilot. The airplane had landed without communicating with the tower in violation of federal air regulations. The air controller, unsuccessful in making contact with the pilot of the plane after it had landed, properly called the local police. During the resulting investigation, the officers saw the marijuana in "open view." See Ensor v. State. At this point, the officers had probable cause for the search.
The warrantless seizure of the marijuana in the airplane was entirely proper under the doctrine of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which has been expressly adopted as the law of this state. § 933.19, Fla. Stat. (1977). In Carroll, the Supreme Court of the United States held that automobiles or other vehicles may be searched without a warrant where an officer, authorized to search, has probable cause for believing that the vehicle is carrying contraband. The Court acknowledged a necessary difference between the search of a structure where a warrant normally must be obtained and the search of a vehicle where, because of the mobility of the vehicle, it is not practicable to secure a warrant.
The fact that the plane was parked and had been secured by the police does not render the Carroll exception to the warrant requirement inapplicable. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Supreme Court addressed the issue of whether a warrantless search of defendant's automobile parked outside the police station was reasonable under Carroll. Holding that a warrant was not a necessary prerequisite to the search, the Supreme Court said:
Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.
Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

*572 On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house. Compare Vale v. Louisiana, ante, p. 30 [399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409]. But as Carroll, supra, held, for the purposes of the Fourth Amendment, there is a constitutional difference between houses and cars.
399 U.S. at 51-52, 90 S.Ct. at 1981-1982.
Recently, in Gluesenkamp v. State, 391 So.2d 192 (Fla. 1980), we relied on the rationale of Chambers v. Maroney as the basis for rejecting defendant's contention that no exigent circumstances justified a warrantless search of the van because he and his companion had been detained and were not in a position to drive the van out of the jurisdiction. The Court said: "We see no reason why the police should be required to wait until an attempt is made to move a vehicle before they are allowed to search it." 391 So.2d at 201.
The present case is not analogous to Robbins v. California, ___ U.S. ___, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), where the Supreme Court held the warrantless opening of two packages found in the luggage compartment of a station wagon to be an unreasonable search and seizure violative of defendants' fourth amendment rights. In Robbins, the Supreme Court said that the Carroll exception does not justify the warrantless search of a closed piece of luggage or other closed container found inside an automobile. Explaining that the "automobile exception" is supported not only on the basis of the inherent mobility of a vehicle but also by the diminished expectation of privacy surrounding the automobile, the Court concluded that no such diminished expectation of privacy characterized the luggage contained in the automobile. The Court acknowledged, as it had earlier in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), however, that not all containers and packages found by the police deserve the full protection of the fourth amendment. Some containers by their very nature cannot support a reasonable expectation of privacy because from their outward appearance alone their contents can be inferred. "[I]f the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view. The same would be true, of course, if the container were transparent, or otherwise clearly revealed its contents." 101 S.Ct. at 2846 (emphasis added). In this case, unlike Robbins, the officers, through their open-view sighting of the marijuana in the airplane, had probable cause to believe that the containers contained marijuana, and they were therefore justified in their warrantless search and seizure pursuant to the dictates of Carroll.
Having determined that section 893.13(1)(d) is constitutional and that the trial court properly denied the motions to dismiss and to suppress, we affirm.
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in part and dissents in part with an opinion, with which ADKINS, J., concurs.
SUNDBERG, Chief Justice, concurring in part and dissenting in part.
Because I cannot accept what appears to me to be strained reasoning by the majority to reach its result, I would find this warrantless search violative of both the federal and state constitutions, and therefore dissent as to the majority's holding on this *573 issue. I concur, however, that the drug control statute under attack is constitutional and includes all species of cannabis.
Although the majority skips over the issue of standing, the first inquiry a court must make in the context of the fourth amendment is whether those asserting protections of that amendment have standing to come within its shelter. The concept of standing is interwoven with a party's privacy expectations. See United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
Appellant Adoue is the asserted owner of the aircraft and exercised a large degree of control over the use and travels of the aircraft, and therefore clearly has a sufficient proprietary interest to sustain his claim of fourth amendment protections. Likewise, appellant Wexler exercised a considerable degree of control over the use of the airplane, which included the hiring and paying of pilots to fly the aircraft. Furthermore, appellants took reasonable measures to ensure that their illicit cargo remained a secret. The airplane was landed in the dark at a small municipal airport, and parked among other airplanes in an area of limited accessibility. Unlike a car parked on a public street, the airplane here was relatively isolated from prying eyes in its position on the airfield. Landing without contacting the tower was evidently routine, and did not indicate in itself that appellants had reason to expect that their plane would thereby be subject to search. Nor did appellants abandon their privacy expectations by leaving the clearly operable airplane unattended in the airfield parking area. See Agnew v. State, 376 So.2d 13 (Fla. 2d DCA 1979). Under these conditions it can be said that appellants' expectations of privacy in the airplane were reasonable.[1]
Under both the federal and state constitutions, once a reasonable privacy expectation is found, warrantless searches are per se unreasonable unless an exception to the warrant requirement is established. See Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Hornblower v. State, 351 So.2d 716, 717 (Fla. 1977). Two exceptions are arguably applicable: the "plain view exception," and the "automobile exception." For the following reasons, I find neither of these exceptions properly applies to this situation.
The "plain view exception" sometimes has been misunderstood in its application by the courts, and although the majority at least recognizes that this exception is inapplicable here, I feel it necessary to clarify its ruminations in this area.[2] This term has been applied indiscriminately to three factually distinct situations. For purposes of discussion I shall label them: (i) the non-intrusive situation, (ii) the prior valid intrusion situation, and (iii) the pre-intrusive situation.
The non-intrusive situation occurs when a police officer who is outside of any vehicle or structure observes evidence of criminality which is also outside of any vehicle or structure. In this situation the police officer may seize this evidence without a warrant because there is no reasonable expectation of privacy in the seized item. Because there is no reasonable expectation of privacy, and no warrant requirement, it is incorrect and confusing to label "plain view" as an exception to the warrant requirement in these cases. Where fourth amendment rights do not attach there is no warrant requirement. See State v. Belcher, 317 So.2d 842 (Fla. 2d DCA 1975) (where observations of suspicious activity on a porch *574 were made from the street and objects were seized pursuant to those observations "expectations of privacy," if any, were not violated); Perez v. State, 383 So.2d 769 (Fla. 3d DCA 1980) (citing Belcher for upholding the seizure of marijuana being loaded onto a truck on a public street during the early morning hours). See also Air Pollution Variance Board v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Hornblower v. State, 351 So.2d 716, 718 n. 1 (Fla. 1977).
In the prior valid intrusion situation, the classic "plain view," the law enforcement officer is already legally inside of a vehicle or structure when he inadvertently sees and then seizes an item. This is the type of case to which the Supreme Court was referring in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), when it said,
What the "plain view" cases have in common is that the police officer in each of them has a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification  whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused and permits the warrantless seizure.
403 U.S. at 466, 91 S.Ct. at 2038. See Grant v. State, 374 So.2d 630, 631 (Fla. 3d DCA 1979) (a warrantless search was justified as to shotgun and .32 pistol which were in "plain view" of officers as they entered room in which body was found when they responded to an emergency police call without a warrant); Spinkellink v. State, 313 So.2d 666, 669 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976) (a warrantless search was justified as to a gun which was found in "plain view" in an open kitchen drawer pursuant to a consent search); Alford v. State, 307 So.2d 433, 439 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976) (having authority and justification for being where they were through consent and a warrant, the officers were justified in seizing items found in plain view or discovered inadvertently during the course of a reasonable search of defendant's premises).
Whether a warrant is required in the final category, the pre-intrusive situation, is a question which has fostered much confusion. In this situation, the police officer is on the outside of a vehicle or structure when he sees evidence of criminality inside that vehicle or structure. When the police officer stands outside a vehicle or structure and looks inside, his constitutionally permissible observation[3] only gives rise to a basis for probable cause, which he can then utilize in securing a warrant. Some additional justification is needed for the officer to enter and seize the object without a warrant. Coolidge, 403 U.S. at 468, 91 S.Ct. at 2039. Our society deems it important to honor a legitimate expectation of privacy in a structure or in a vehicle; this is why we require our law enforcement officials to have an additional justification to enter these areas. Id. at 449, 458-64, 91 S.Ct. at 2029, 2033-37.
In the case of a fixed premises, the additional requirement needed for entry, in the absence of exigent circumstances, is a warrant. Compare Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925) (seeing contraband whiskey in an open doorway did not justify an immediate entry and seizure without a warrant, it merely furnished probable cause for a warrant which was issued and executed) with Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932) (unconstitutional seizure when police enter into a garage without a warrant and seize contraband liquor, even though the police saw the liquor from a place where they had a right to be). A warrant is likewise required to search a *575 vehicle, again unless exigent circumstances exist.[4] In the case of a vehicle, which is mobile or could readily be moved at the time a search could have been made, the exigency of the movement plus a reduced privacy expectation may combine with probable cause to justify a search under the doctrines of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and Chambers v. Maroney, 399 U.S. 42, 51-52, 90 S.Ct. 1975, 1981-1982, 26 L.Ed.2d 419 (1970).[5]See also Scales v. States, 13 Md. App. 474, 477-78, 284 A.2d 45, 47-48 (1971).
The plain view doctrine simply does not apply here. Since appellants had a reasonable expectation of privacy, and their fourth amendment rights attached, then this case is a pre-intrusive plain view situation. The plane was parked in a parking area, it was secured by the police, and it was not mobile. The record indicates that no one was inside the airplane, nor was there any suspicion that anyone was inside the airplane. The airport employees who had examined the airplane immediately after landing by opening the door gave the inspecting officers no indication that persons were on board. The officers by looking through windows and the open door had satisfied themselves that no one was inside the aircraft prior to the intrusive search into the interior of the airplane. They considered the plane entirely secured prior to the intrusive interior search. The police easily could have obtained a warrant once they had established probable cause after looking into the plane. The viewing of the cannabis provided only the probable cause for a search, and not the exigent circumstances to avoid a warrant. Hence the search was unreasonable, a result also dictated by our state constitution with its greater concern for the privacy of Florida's citizens.[6]
The second exception raised by this case, and the majority's linchpin, is the application of the "automobile exception"[7] to the warrant requirement, created by Carroll which required only probable cause to search a car when "it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U.S. at 153, 45 S.Ct. at 285. Chambers extended Carroll to uphold a search made sometime after the original highway stop at which time a search could have been made. Chambers, 399 U.S. at 49-52, 90 S.Ct. at 1980-1982. Airplanes, however, are not generally open to public view, and travel through airways in which a large degree of privacy is apparent. Since exposure to public scrutiny is a crucial basis for the "automobile exception," I find the exception practically inapplicable to an airplane, but will assume, for argument's sake, that it may have some applicability to the case.
Added to this scenario is the case of Coolidge, which would not allow an automobile search without a warrant when the car was parked in the owner's drive, in spite of the apparent continued mobility of the car. Coolidge undermines the claim that Chambers was predicated on the inherent vehicular *576 mobility[8] rather than actual mobility, since Coolidge's car was inherently mobile so long as it continued to be a car.[9]
The second buttress for warrantless searches of automobiles is one which I do not question in principle: there is a diminished expectation of privacy in an automobile. See United States v. Chadwick, 433 U.S. 1, 12-13, 97 S.Ct. 2476, 2484-85, 53 L.Ed.2d 538 (1977). In practice, however, this rationale again fails to account for a warrantless search that is allowable when a car is stopped on the street but not allowable if the car is parked in a drive. Relatively identical diminished privacy expectations in the automobile apply in both situations, and this rationale therefore cannot be the critical one.[10] Furthermore, an airplane is not as open to public scrutiny as a car, particularly as it travels the airways. See note 7 supra.
I am forced to the same conclusion as the Supreme Court in Cady v. Dombrowski, 413 U.S. 433, 440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973), where it noted that the cases in this area "suggest that this branch of the law is something less than a seamless web." Since the exigent circumstances created by the aircraft's mobility had been eliminated, under both article I, section 12 of the Florida Constitution and the fourth amendment of the federal constitution, a warrant should have been obtained since it was evident that a delay would not have led to the loss of the aircraft and its contents. See Coolidge, 403 U.S. at 462, 91 S.Ct. at 2035-36. Furthermore, Chambers is not applicable since there never existed a stop under Carroll conditions based on exigent circumstances. Because the occupants of the aircraft were not in the proximity of the "vehicle" when it was seized, the exception created in Carroll and extended by Chambers is not here factually appropriate. Chambers merely held that a search that could have been made on the highway under Carroll may be made later at the station. Carroll is the predicate for Chambers; Carroll is founded on exigent circumstances, which never existed in this case.
Recently, courts faced with a Chambers problem when the vehicle is clearly immobilized have had difficulty supporting the rationale. The Tenth Circuit Court of Appeals sharply questioned the validity of Chambers once the mobility of a plane had been eliminated by being surrounded by ten armed agents. United States v. Gooch, 603 F.2d 122, 125 n. 3 (10th Cir.1979). Though it felt bound by Chambers, the court expressed its preference for the logic of Mr. Justice Harlan writing in a separate opinion in Chambers:
[I]n the circumstances in which this problem is likely to occur, the lesser intrusion will almost always be the simple seizure of the ... [vehicle] for the period ... necessary to enable the officers to obtain a search warrant.
399 U.S. at 63, 90 S.Ct. at 1987.
The Rhode Island Supreme Court found that exceptions to Chambers created by United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), which required a warrant to search repositories of personal effects in a car, had so undermined the "automobile exception" as to require the *577 Rhode Island court to refuse to acknowledge the continuing validity of Chambers. That court relied on a state constitutional provision equivalent to the fourth amendment to prevent searches of vehicles once exigent circumstances had dissipated. See State v. Benoit, 417 A.2d 895 (R.I. 1980).
This Court should also rely on our state constitution to prevent searches under these circumstances. Florida has expressed its preference for exclusion of ill-gotten evidence in the last sentence of article I, section 12, Florida Constitution: "Articles or information obtained in violation of this right (against unreasonable searches and seizures) shall not be admissible in evidence." We ignore it at great risk. This state alone has chosen to purposely provide an explicit and more comprehensive protection from unreasonable police searches.[11] Florida's constitutional mandate is more restrictive than its federal counterpart.[12]
[S]tate courts cannot rest when they have afforded their citizens the full protections of the federal Constitution. State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law. The legal revolution which has brought federal law to the fore must not be allowed to inhibit the independent protective force of state law  for without it, the full realization of our liberties cannot be guaranteed.
Brennan, State Constitutions and The Protection of Individual Rights, 90 Harv.L.Rev. 489, 491 (1977). These protections from unreasonable state intrusions into the privacy of its citizens must be accorded the highest priority in our system, a priority that Floridians have demanded in the constitutional exclusionary rule and the recently created constitutional right to privacy. "[T]he primary value underlying the constitutional right to privacy is the preservation of an inviolate enclave for one's personality. Accommodation by limitation of the right in any particular case is not an incremental adjustment in a societal policy, but a direct violation of the principle to be protected." Note, Formalism, Legal Realism, and Constitutionally Protected Privacy Under the Fourth and Fifth Amendments, 90 Harv.L. Rev. 945, 987 (1977) (footnote omitted). We must recognize that freedom from unwarranted police intrusions into individual privacy is a freedom worth the societal cost of allowing the guilty sometimes to go unpunished due to exclusion of otherwise reliable evidence. The dubious leave Winston Smith unremembered.[13]
The exceptions created to the "automobile exception" by Chadwick and Sanders have finally come full circle to consume the rule in Robbins v. California, ___ U.S. ___, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), a case the majority tries desperately to distinguish but fails as desperately. Robbins of course expanded the protective scope of the "luggage exception" to the "automobile exception," to include packages wrapped in opaque plastic bags, exactly the case here. Robbins is thus clearly analogous to this case since both concern the "automobile exception" and a package that is within the vehicle. The majority offers nothing to support its bold assertion that these cases are not analogous. They seek solace in the Supreme Court's mention of footnote 13 of the Sanders opinion, in which two types of containers were not protected: (1) contents inferable by outward appearance; and (2) container is open. But such a purblind interpretation demonstrates the majority's failure to continue in its reading of Robbins, for the passage on which it grasps is not revitalizing these two unprotected areas, but rather is reducing them to this statement:
The second of these exceptions obviously refers to items in a container that is not closed. The first exception is likewise little more than another variation of the *578 "plain view" exception, since, if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view. The same would be true, of course, if the container were transparent, or otherwise clearly revealed its contents. In short, the negative implication of footnote 13 of the Sanders opinion is that, unless the container is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment.

101 S.Ct. at 2846 (emphasis added).
The majority has readily conceded that the "plain view exception" does not apply. Since the contraband was not within the "plain view exception," a fortiori it was not within the footnote 13 exception to the Robbins exception to the "automobile exception" to the fourth amendment. The majority has simply run out of exceptions. Only one bag was ripped so that its contents were not enclosed in a container, and only that bag can reasonably be excluded from the protections of Robbins. Furthermore, the majority's assertion that probable cause existed misses the point, for no amount of probable cause will satisfy the warrant requirement, unless some exception can be found. Robbins protects the bags that were intact from the "automobile exception," and probable cause alone cannot justify the intrusive search as to these bags.
Because I believe that the "plain view exception" and "automobile exception" are inapplicable under these circumstances, I would reverse the trial court's denial of appellants' motion to suppress.
ADKINS, J., concurs.
NOTES
[1] Article II, section 3 says:

Branches of government.  The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any power appertaining to either of the other branches unless expressly provided herein.
and Article III, section 1 says:
Composition.  The legislative power of the state shall be vested in a legislature of the State of Florida, consisting of a senate composed of one senator elected from each senatorial district and a house of representatives composed of one member elected from each representative district.
[2] The statute involved here is similar to the statute upheld on other grounds in Rinzler v. Carson, 262 So.2d 661 (Fla. 1972). In Rinzler, this Court held that it was within the legislative power to exempt those who properly registered their weapons under federal law from the operation of the state's firearms statute.
[1] As comparable authority, I note that two cases from the federal fifth circuit have dealt with airplanes landing under similar circumstances, and both have granted the defendant the standing  privacy expectation necessary to assert a fourth amendment claim. See United States v. Johnson, 588 F.2d 147 (5th Cir.1979); United States v. Brennan, 538 F.2d 711 (5th Cir.1976), cert. denied, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977).
[2] For a most helpful discussion on this point, see Moylan, The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle, 26 Mercer L.Rev. 1047 (1975).
[3] A constitutionally permissible observation is one which does not rise to the level of a search, and therefore is not subject to the requirements of the fourth amendment.
[4] Although Albo v. State, 379 So.2d 648 (Fla. 1980), appears inconsistent with this analysis of the "plain view exception," that case did not really need to rely on "plain view" since the "automobile exception" was properly applicable. In Albo v. State, a vehicle was at a stop at a roadside parking lot after a traffic violation had occurred. The officer saw bales of marijuana stacked in the vehicle, providing probable cause for a warrantless search of the vehicle under Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
[5] Of course a person's expectation of privacy under some conditions in an automobile is somewhat less than his expectation of privacy in a structure.
[6] The majority and I thus both agree that the "plain view" exception is inapplicable here. The case of Derrickson v. State, 399 So.2d 100 (Fla. 1st DCA 1981), which upheld this same search as to the pilot of the aircraft relying on this exception must therefore be disapproved.
[7] For fourth amendment purposes, sometimes airplanes and automobiles are treated as substantially identical. See, e.g., United States v. Gooch, 603 F.2d 122, 124 (10th Cir.1979). Another case has refused to equate the two. See United States v. Brennan, 538 F.2d 711, 721 (5th Cir.1976).
[8] Inherent mobility was espoused by the Supreme Court as a basis for the exception in United States v. Chadwick, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977). For a prior rejection of this idea, see Coolidge, 403 U.S. at 461 n. 18, 91 S.Ct. at 2035 n. 18.
[9] A warrant was required in Coolidge even though the car was inherently mobile. In the instant case, the plane was immobilized by agents; only its inherent mobility remained. For a case rejecting inherent mobility of a car abandoned in a field, see United States v. Ramapuram, 632 F.2d 1149, 1155 (4th Cir.1980).
[10] In Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), the Supreme Court attempted to refine this distinction by asserting that a car parked in a public place was not within Coolidge since access was not restricted. But access was restricted in Coolidge by a guard posted on Coolidge's property, not by the fact that the car was parked where it was. Cardwell also dealt with the search of a car's exterior, so any reference to interior searches is dicta.
[11] See Davis & Rayburn, 55 Fla. B.J. 243, 246 n. 6 (1981).
[12] See Grubbs v. State, 373 So.2d 905, 909 (Fla. 1979).
[13] See generally G. Orwell, Nineteen Eighty-Four (1973).